A. J. OWENS, Adm'r, v. RICHMOND & DANVILLE RAILROAD COMPANY.

*Railroads—Negligence, burden of proof to show contributory, is not upon the company.*

In an action by an engineer, in the service of a railroad company, for damages for injuries sustained by reason of the company's failure to keep its road-bed in order; *Held*, to be error in the court to instruct the jury that the burden of proof rested upon the defendant to show contributory negligence on the part of the plaintiff. The conflicting decisions upon this subject discussed.

(Mr. Justice RUFFIN dissenting).

CIVIL ACTION removed from Davie county and tried at Spring Term, 1882, of ROWAN Superior Court, before *Eure, J.*

The plaintiff, administrator of Mike O'Donnell, deceased, who was an engineer on defendant's road, sues the company to recover damages, alleging that the death of his intestate was caused by the defendant's negligence. Verdict and judgment for plaintiff, appeal by defendant.

*Messrs. McCorkle & Kluttz, W. H. Bailey* and *Charles L. Heitman,* for plaintiff.

*Messrs. D. Schenck* and *Watson & Glenn,* for defendant.

SMITH, C. J. The winter of 1880–'81 was unusual in its severity and changes of temperature, in consequence of which, by reason of successive freezings and thawings, a large mass of stone and dirt, forming the upper portion of a deep "cut" through which the railroad ran, becoming loosened, on the night of January 7, 1881, was precipitated on the track. The intestate of plaintiff, an engineer in the employment of defendant company, and as such in charge of the fast mail train then moving rapidly southward from Thomasville, its last stopping place, a little after the hour of eleven P. M., brought the train in sudden and violent contact with the unobserved obstruction, from the shock of which the intestate and the fireman were both instantly killed.

The night was dark; snow lying on the ground to the depth of three or four inches, but not on the slopes of the "cut"; and another train had passed over the place of the disaster safely, about a half hour before. The approach to the "cut" from Leonard's bridge is on a grade of fifty-two feet to the mile, and an ascending train can be brought to a stop in half the time required upon a level track. The head-lights of the engine, aided by that reflected by the sides of the "cut," project the light some one hundred yards in advance, at which distance an object of four feet in diameter would be rendered visible to one on the

watch for·an obstruction, and, within this space and at this grade, a train of three cars moving at a speed of thirty miles an hour, by means of the air-brakes and reversing lever, could be arrested in running seventy-five yards, or, as others skilled in working engines thought, one hundred yards.

The train that met the disaster was nearly an hour behind schedule time when it left Greensboro, and the intestate and the conductor were both directed by the master of trains at that station not to make up lost time, and the conductor reminded the intestate of this order while wood was being taken in at Thomasville.

The rules of the company require a reduction of speed at Leonard's bridge to a rate of fifteen miles an hour. The conductor assigned to the train did not observe that the brakes were applied, or that there was any slackening up of the train at the bridge.

This is substantially the testimony of the witnesses, mostly the employees of the company, upon which rests the imputation of contributory negligence on the part of the intestate in bringing about the catastrophe in which he lost his own life. There was much evidence of the dangerous appearance of the overhanging rock and earth for a long time previous, and of the failure of the company to provide against the peril of its falling, but it is not necessary to set it out with particularity, since it was sufficient to enable the jury to find the fact of the defendant's negligence.

We propose to consider only one of the numerous exceptions appearing upon the record, and to which the brief summary of the testimony, bearing upon the intestate's conduct and management of the train at the time of collision, is pertinent.

The court, among other instructions, charged the jury: " If the jury believe that the defendant was guilty of negligence, then it devolves upon the defendant to satisfy the jury by a preponderance of evidence that the plaintiff's intestate was killed by his own negligence, or that he contributed to his death."

The decisions in the courts of England and the different states

are not in harmony upon the question, on which of the parties to an action for the recovery of damages, resulting from the negligence of the defendant, rests the burden of showing the absence or presence of negligence on the part of the plaintiff contributing thereto. "To make out a *prima facie* case," remarks a recent author in examining the doctrine of contributory negligence, "the plaintiff must not only show negligence on the part of the defendant, but he must also show that he was in the exercise of due care in respect to the occurrence from which the injury arose; and this is held in Maine, Massachusetts, Iowa, Illinois, Connecticutt, Mississippi, Michigan and Indiana; while in Pennsylvania, Missouri, Wisconsin, Kentucky, Maryland, Kansas, Alabama, Minnesota, New Jersey and California, it is held that the negligence of the plaintiff contributing to the injury complained of is a matter of defence, and that ordinarily the burden of proving it is on the defendant. In New York and several other states the decisions are irreconcilable." 2 Thompson on Negligence, 1176.

The class of cases which devolve this duty on the plaintiff assumes the cause of action to consist in an act or omission, involving not only negligence in the defendant, but the exercise of proper care by the injured party, both of which must co-exist and co-operate as essential ingredients, to entitle the latter to compensatory damages. The cause of action is complex, consisting in the union of both these constituent elements, contributing to the same injurious result. The principle is stated with force and clearness by Mr. Justice STRONG, of the court of appeals of New York, in *Button* v. *Hud. Riv. R. R. Co.*, 18 N. Y. Rep., 248, at a term held in 1858. The intestate had been run over and killed by a horse-car of the defendant, moving along West street, in the city of New York, at the hour of eleven in the night. "If the intestate was negligent, and his negligence concurred with that of the defendant," he observes, "the plaintiff had no cause of action. The reason why no right of action would exist is, that both the intestate and defendant's being guilty of negligence, they were the common authors of what immediately flowed from it, and it

64

was not a consequence of the negligence of either. The court cannot accurately and will not undertake to discriminate between them, as to the extent of the negligence of each. Neither, therefore, could allege against the other any wrong, and without a wrong there can be no legal injury. In this view, the exercise of due care by the intestate was an element of the cause of action. Without proof of it, it would not appear that the negligence of the defendant caused the injury."

There are many cases where the doctrine is maintained, that proof by the plaintiff of his own exercise of due care constitutes part of his case, and in its absence there can be no recovery. Thus, in *Lane* v. *Crombie*, 12 Pick., 177, where the plaintiff was run over by a sleigh; in *Dyer* v. *Tallcott*, 16 Ill., 300, where the injury was produced by the plaintiff's running against a rope stretched over and concealed in the waters of Chicago river by the defendant; and in *Perkins* v. *R. R. Co.*, 29 Maine, 307; *Walker* v. *Herron*, 22 Texas, 55, and the large number of cases referred to in the notes to Wharton on Negligence, § 427; Sher. & Redf. Neg., § 43, note 2; 2 Thomp. Neg., 1085, 1176, 1177, notes 1-8.

On the other hand, the contrary is distinctly declared and the true rule said to be, that contributory negligence is wholly a matter of defence to be set up in the answer and proved on the trial. The cases of this import will be found in notes to the same works, Whar., § 428; Sher. & Redf., § 43, and authorities on either side collected in the addenda, pp. 12, 13; 2 Thomp., 1177. It is held in *R. R. Co.* v. *Gladmon*, 15 Wall., 401, where a small child of seven years was injured by a car; and in *R. R. Co.* v. *Horst*, 93 U. S. Rep., 291, where the injury was sustained by the party while traveling on a cattle-train of the company, the supreme court of the United States say that the *onus* of showing the plaintiff in fault rests upon the defendant, and will not be available as a defence unless established by a preponderance of the evidence.

In *Johnson* v. *R. R. Co.*, 6 Duer's Rep., 21, the plaintiff, in

avoiding a danger apprehended from another direction, came in contact with a passing car and was killed. The proofs left the matter in doubt as to the plaintiff's exercising proper care, and the court ruled that the evidence should have gone to the jury. To the same effect are *Thompson* v. *R. R. Co.*, 51 Mo., 190; *R. R. Co.* v. *Rowan*, 66 Penn. St. Rep., 393; *Hoyt* v. *City of Hudson*, 41 Wis., 105.

While we do not undertake to reconcile the divergent decisions in reference to the burden of proof, we think a clear deduction from them, and as well supported by sound reasoning, is, that if in disclosing the facts which constitute the defendant's negligence, it does not appear whether the plaintiff exhibited the necessary watchfulness and care to avoid the consequent harm or injury, it will be assumed there was no such want of it on his part; and if the plaintiff in any legal sense were the cause or the concurring cause of his own injury, the duty of so showing in self-exculpation devolves upon the defendant. The inference of this co-operating agency may be drawn from the plaintiff's proof of the defendant's neglect or misconduct, as well as by substantive and independent testimony produced by the defendant. "It is true," remarks Chief-Justice Thompson in *R. R. Co.* v. *Rowan, supra,* "if negligence appear by the plaintiff's own testimony, the defendant might rest upon it as securely as if proved by himself. As the love of life and the instincts of self-preservation are the highest motive for care in any reasoning being, they will stand for proof until the contrary appears."

But whatever may be the difficulty felt in an attempted reconciliation of the opinions entertained and expressed, or the laying down any rule of universal application on the subject, we think all the cases tend to the point, that when all the testimony is before the jury to establish a negligence in the plaintiff concurring with that of the defendant, and both contributing to the act from which the injury springs, it must be left to the jury to determine whether, upon the facts proved, the plaintiff has a legal cause of action against the defendant. The rule of lia-

bility has its modifications even when there is mutual negligence ; for if the plaintiff was negligent, and the defendant, by the use of ordinary care, could have avoided doing the injury, he will, nevertheless, be subject to the action; and so, if the defendant was negligent, and the plaintiff, by the use of ordinary care, could have escaped the injury, the latter is not entitled to recover. Leading cases, illustrative of the two latter propositions, are *Davis* v. *Mann*, 10 M. & W., 545, where the defendant, with his horses and wagon, ran violently against the plaintiff's donkey, fettered and left by him negligently in the highway, when, by careful driving, the injury could have been averted; and *Butterfield* v. *Farester*, 11 East., 60, where the plaintiff rode violently against a pole put across the highway by the defendant, a free passage being left by another street in the same direction, and LORD ELLENBOROUGH declared that one party being in default will not dispense with another's using ordinary care for himself; for, he remarks, "two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

In the case before us, the blame ascribed to the company is not in the failure to remove the obstruction from the track during the brief space between the fall of the encumbered mass of earth and stone and the collision of the train with it, but more remotely in not examining the condition of the "cut" and removing the overhanging, menacing mass before its precipitation, and thus averting the danger and the disaster. But the direct and immediate cause of the intestate's death was his own action in impelling the train upon the obstruction, and his own exercise of vigilance, or want of proper care and attention, under the circumstances and at such a time, were connected with and were essential qualifications of that action, upon which the right to recover depended. The presence of one or the other gives character to the act, and, indeed, constitutes a material part of it. To the solution of this inquiry, the attention of the jury must be directed. And the distinction seems to be marked

between those cases where the defendant's negligence is the remote, though it be an efficient, cause of the injury sustained by the plaintiff, and those in which the plaintiff's carelessness precedes, and that of the defendant is the direct, immediate and active cause producing the injury. In the former, the defendant's misconduct may be the primary, but that of the plaintiff, the direct cause, and it is difficult to see how, in examining into the plaintiff's agency, you can separate the character of the act, as involving care or blame, from the act itself, as a matter for the jury to consider and pass upon.

In *Oldfield* v. *R. R. Co.*, 14 N. Y., 310, WRIGHT, J., says: "The circumstances under which the death occurred, as detailed by the witnesses, were not conclusive in law that the injury was occasioned by the fault of the child, or that such fault contributed to produce it. The question of the *negligence of the parties* was one, under the proofs when the plaintiff rested, *eminently for the consideration of the jury*."

In the case cited from 66 Penn. St. Rep., the Chief-Justice remarks, that "if negligence appears by the plaintiff's own testimony, the defendant might rest on it as securely as if proved by himself."

So, in *Robeson* v. *Gary*, 28 Ohio St. Rep., 241, DAY, J., speaking for the court, says; "It is only when the injury is shown by the plaintiff, and there is nothing that implies that his own negligence contributed to it, that the burden of proving contributory negligence can properly be said to be cast on the defendant; for when the plaintiff's own case raises the suspicion that *his own negligence contributed to the injury,* the presumption of the care on his part is so far removed that he cannot properly be *relieved from disproving his own contributory negligence by casting the burden of proving it on the defendant* * * *. The question should be left upon the whole evidence to the determination of the jury, with the *instruction that the plaintiff cannot recover, if his own negligence contributed to the injury*."

Again, in *O'Brien* v. *McGlinchy*, 68 Maine, 552, decided in 1878, PETERS, J., after stating the proposition that if the injured party fails to take proper precaution and care, this will not exonerate the defendant from the duty of using reasonable diligence to prevent the injury, proceeds: "But this principle would not govern when both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them; nor when the negligent act of the defendant *takes place first, and the negligence of the plaintiff operates as an intervening cause between it and the injury.*"

So in *Hoyt* v. *Hudson, supra,* LYON, J., after placing the burden on the defendant of proving facts which go to defeat the action in cases generally, goes on to say: "The rule here adopted does not apply to a case in which the proofs on the part of the plaintiff show, or tend to show, contributory negligence. If such negligence conclusively appears, the court will nonsuit the plaintiff, or direct the jury to find for the defendant. If the evidence only tends to show such contributory negligence, the question must go the jury, to be determined like any other question of fact, upon a preponderance of the evidence."

In *R. R. Co.* v. *Gladmon, supra,* after laying down the rule, as quoted, HUNT, J., observes, "that generally, as here, the proof which shows the defendant's negligence shows also the negligence or the caution of the plaintiff. The question of the burden of proof is therefore not usually presented with prominence."

As the deceased, upon the evidence, while in charge of the train as engineer, ran it with great violence upon the obstructing fallen rubbish and lost his life by the collision, the inquiry before the jury was material in supporting the action, whether he was then in the exercise of that care and attention demanded by the circumstances for his own safety and that of the train and others upon it, and these would seem to be inseparable from his acts since, if they were wanting, the disastrous result must be attrib-

uted, not to any omitted duty on the part of the company, but to his own neglect. This inquiry, we think, unaffected by presumptions that might be raised in the absence of evidence, ought to have been submitted to the jury and determined on the weight of the evidence, as proving or disproving the intestate's own negligence and want of care.

The error committed by His Honor consists in separating a part of the facts entering into and constituting the transaction, and drawing an inference from them, as if they were the entire transaction (admissible upon the authorities if this were true), and requiring this inference to be overcome in weighing the other facts, instead of submitting the whole evidence with directions to the jury as to the law in the one or the other aspect of their finding. We see no just grounds for dislocating so much of the evidence as tends to charge the intestate with official and personal neglect from that proving neglect in the defendant, so that the former, fortified by the attaching presumption, goes over to the jury and is made to possess a force denied to the latter in determining the general result. In law, it is just as necessary that the plaintiff be free from fault, without which the catastrophe could not have taken place, as that the defendants's neglect of duty should have been an efficient agency in causing it. Both must co-exist as concurrent forces to exempt from liability, and the exercise of due care or the want of due care, in either, must alike be found by the jury upon the proofs in the case.

The whole controversy turns upon the point, whether the intestate on the occasion was vigilant and on the look-out, as one in his position should be, for possible dangers, or was recklessly rushing on with his train, regardless of what might happen to it, so that he failed to observe the peril in time to resort to the means of arresting its progress or diminishing its speed. If he was remiss and neglectful in this regard, his death was caused by his own act, and his administrator cannot recover. If, on the contrary, he was watchful and used due care, and the collision could not have been prevented by the use of such appli-

ances as were at his command, then the defendant's neglect found by the jury would render it chargeable with the consequences directly flowing from such neglect.

The question was simply as to the character or quality of the intestate's own act, as determined by the attending circumstances; and as there is no presumption, when all the facts are disclosed, that proper care was used, so there is none that it was wanting; and the transaction should have been committed to the jury to find how the fact was.

It was not proper to burden the defence with the removal of the presumption thus raised for the plaintiff, and put it in the scale with the evidence on one side of the proposition to outweigh that adduced on the other. The inquiry should have been free from that embarrassment, and simply left to the jury to solve upon the evidence heard.

We reach this conclusion upon a survey of the whole subject, and in the light of judicial opinion, as a just and fair rule to be observed in such contentions, and we think that whenever the issue depends upon the character of the plaintiff's own conduct, it being the immediate cause of the injury, and there is evidence to warrant the finding, the jury should be left free to determine the essential fact on which the defendant's liability depends. This was not done in the present case, but an inappropriate rule applied, to the predjudice of the defendant, which entitles it to a trial before another jury.

We purposely refrain from expressing an opinion upon the other points, inasmuch as the error pointed out is decisive of the appeal.

The verdict must be set aside and a *venire de novo* awarded, and it is so ordered. Let this be certified.

RUFFIN, J., *dissenting.* I am unable to concur in the view which a majority of the court take of this case, and especially in the reasoning upon which they rest their decision. Even if I understood the facts as they do, I do not think I could assent

to their conclusion; but with an understanding of them so wholly at variance with theirs, it is impossible that I could ever do so.

In his complaint, the plaintiff alleges that his intestate, Mike O'Donnell, was in the employment of the defendant, as an engineer, upon one of its locomotive engines run upon its railroad; that it was the duty of the defendant to provide a safe road-bed for its trains to pass over, but that instead of doing so, it so negligently maintained its road-bed, at a certain place situate near Lexington in Davidson county, known as the "Caldwell cut," that on the night of the 7th of January, 1881, a large mass of rock and earth was permitted to fall from the sides of the "cut" upon the track of defendant's road, whereby the engine driven by said intestate was thrown from the track, and by reason of the concussion so produced, he was thrown from his proper position upon the engine, and instantly killed.

In support of these allegations, the plaintiff introduced a number of witnesses who testified as to the dangerous condition of the "cut" in question, extending through many years; that it was from thirty to forty feet deep, and so constructed that large rocks were left projecting over the road-bed, so that if they fell, they must needs fall upon the track, and were of such a size that they would extend across the entire track; that the rocks were filled with seams and powder cracks produced by blasting, through which the water percolated, and, by freezing, served to dislodge them from the sides of the "cut," and to precipitate them upon the track; that on several occasions, prior to the disaster resulting in intestate's death, large masses of rubbish, consisting of several tons of rock and earth and sufficient to produce fatal consequences, had fallen, from the effects of time and the weather, upon the track at this point; that on the night in question a similar slide took place, whereby a complete obstruction was thrown upon the track, and amongst other things a large rock five feet in length and three feet in thickness, which lay directly across the track and which chiefly caused the disaster; that the day after the accident the defendant caused to be re-

65

moved from the sides of the "cut" five or six car-loads of loose stone and earth, which were in a condition to be precipitated upon the road-bed; that the night was dark, and it had been snowing, and there were some three or four inches of snow on the ground, though none on the sides of the "cut."

It was also in evidence that the winter of 1880–'81 was an extremely cold one, and for three weeks prior to the 7th of January, the cold and freezing had been unusually intense.

I have been thus particular in setting out the substance of the plaintiff's testimony in chief, in order that it may be seen that it establishes a clear *prima facie* case of gross negligence on the part of the defendant, and that there is nowhere to be seen in it even the faintest suggestion of any contributory negligence on the part of the intestate.

In its answer, the defendant denies that either it or its agents or employees had been guilty of any negligence or carelessness about the matters complained of, and says that it is informed and believes that the plaintiff's intestate came to his death by reason of his own neglect and carelessness.

In support of this latter branch of its defence, testimony was offered going to show that another train had safely passed through the "Caldwell cut" about one-half hour before the disaster befell the train upon which the intestate was; that the winter was one of extreme and unusual severity, such as the defendant had no right to anticipate and was not bound to provide against; that the approach from Leonard's bridge to the "cut" was at a grade of fifty-two feet to the mile, and an ascending train could, with the aid of such appliances as were in use at the time, be stopped in half the time requisite upon a level; that the head-light, which was in good condition, threw the light ahead, so that an object four feet in size could be seen at the distance of one hundred and fifty or two hundred yards, by one properly watchful; that the regular schedule time for the train, to which the accident happened, was *thirty miles an hour*, and at that rate and up such a grade the train might be brought to a stop within

seventy-five or a hundred yards; the train that night was nearly an hour behind time upon leaving Greensboro, where the conductor and the intestate, both, received instructions not to undertake to make up any part of the lost time, but to confine themselves strictly to the schedule time; ·that instead of doing so, the intestate drove his engine at the rate of fifty or sixty miles an hour, and though he was required by the regulations of the defendant company to slacken his speed when crossing the bridge at Leonard's creek, he omitted to do so on this occasion. To show the rate at which the train had been driven by the intestate, the defendant introduced its conductor (in charge of the wrecked train), who testified that when the train stopped at Thomasville, which was the last stopping place before reaching the point of the disaster, he reminded the intestate of their instructions not to exceed the regular time; that the distance between Thomasville and the "cut" is nine and a half miles, and they left the former place exactly at four minutes before eleven o'clock, and the disaster occurred exactly at eight minutes after that hour, thus showing that the train had been driven at the rate of some forty-five or fifty miles per hour.

In order to rebut this show of negligence on the part of his intestate, the plaintiff offered testimony going to show that the train in question did not stop at Thomasville at all that night, but passed without stopping. He also offered testimony of a skilled engineer to the effect that an object, even so large as a cow, could not be distinguished by the aid of the head-light at a greater distance than fifty or sixty yards, and that going up such a grade as the one in question, owing to the necessity of keeping the fireman's door open and the glare thereby produced, the engineer could not see ahead at all.

In this state of the proofs, the court, at the request of the plaintiff, instructed the jury that if they believed that the defendant was guilty of negligence, then it devolved upon it to satisfy

them by a preponderance of evidence that the plaintiff's intestate was killed by his own negligence, or that he contributed to his death.

The jury were further instructed, that the burden of proving the defendant's negligence devolved upon the plaintiff, and if the injury could have been avoided by the exercise of ordinary and reasonable care on the part of the intestate and he failed to use such care, it would make him guilty of contributory negligence, and the plaintiff could not recover; that it was for them to determine upon the evidence what his conduct was: was he running his train, in violation of orders and the rules of the company, at an increased speed? or could he have seen by his head-light the mass of rock and earth upon the track in time to stop the train? if he could, it was his duty to do so; and if he neglected any other duty, his failure would be contributory negligence in him; and if the evidence, by a preponderance, satisfied them that such was the case, they should find the issues in favor of the defendant.

Taking the charge as a whole, I see no error in it. Indeed, as it seems to me, if His Honor had had before him, and taken as his guide, the opinion of the Chief-Justice filed in this cause, he could not, more nearly than he did, have presented the course of instruction to the jury, which my brethren say he should have done. In effect, the jury were told to consider the whole evidence and say whether the intestate had, in any way, through his own negligence, contributed to his own injury, but, that if in the conflict of the testimony upon the point they were unable to say with certainty how that was, then, as it was a matter of defence and the burden rested upon the defendant, they should find the issue for the plaintiff.

That there was a conflict in the evidence bearing upon the point, calling for the exercise of a discretion on the part of the jury in passing upon the credibility of the witnesses and the probability of their statements, appears unmistakable to my mind; and yet, if I understand the opinion of the court cor-

rectly, it proceeds upon the ground that the facts of the case were all certainly ascertained and unquestioned before the jury.

It is strange it should be so, yet no question seems so much involved in uncertainty, growing out of the conflicting decisions with regard to it, as that which has reference to the burden of proof in respect to the plaintiff's freedom from negligence, in a case such as this—some of the authorities holding that it devolves upon him to allege and affirmatively establish that he was free from negligence contributing to his injury, while others hold that his negligence is a matter of defence, the burden of proving which rests upon the defendant. In this court, until now, it has been an open question; but to my mind it seemed so reasonable and logical that the *onus probandi*, in such a case, should rest upon the defendant, that I could but hope the court would, whenever the opportunity offered, adopt that view, and not leave it to be any longer a disputed point with us.

The opposite rule strikes me, not only as being illogical and contrary to the rules of good pleading, in that, it requires the plaintiff to aver and prove negative matters, but as losing sight of that reasonable presumption, which the common law always makes, that every person does his duty until the contrary is shown. It is, moreover, in opposition to the very law of our nature, and makes no allowance for that instinct which prompts men, when in hazardous situations, to use care in avoiding injury and preserving their lives.

Two out of the three commentators referred to in the opinion of the Chief-Justice do not hesitate to declare their dissent to such a rule. In Wharton, § 425, after referring to the question as being unsettled by reason of the conflicting decisions upon it, the author remarks that it should be remembered, that as a person is presumed to be careful until the contrary appear, the plaintiff, after having shown the defendant's negligence, *ought to be entitled to rest on this presumption.* In Sher. & Redf., § 44, in discussing what should be the true rule in such cases, the authors say, their opinion agrees with that expressed by DUER,

J., in *Jackson* v. *Hudson River*, &c., 5 Duer, 21, where that able jurist held negligence on the part of the plaintiff to be a matter of defence, to be affirmatively proved by the defendant, though it might of course be inferred from the circumstances proved by the plaintiff.

When the plaintiff in this case closed his evidence, he had a perfect *prima facie* case to go to the jury with. He had given evidence of the defendant's neglect, and no contributory negligence of the deceased appeared. The logical consequence of such a condition of things was, that the defendant as a wrong-doer should be required to make compensation to the party injured, and if it sought to relieve itself of that obligation by the fact that the deceased had contributed to the injury, it was incumbent on it, as it seems to me, upon every principle of right reasoning and good pleading, to establish that fact by at least a preponderance of testimony; and when after this, the evidence upon the point became contradictory and conflicting, and was left to go to the jury in that condition, I can but think that His Honor did right in reminding the jury that the laboring oar was upon the defendant, whose duty it was to make the matter plain. To do so, was to do nothing more than to tell them that they might make use of, as elements of evidence, that presumption of right conduct which the law always makes, and those instincts which prompt men in their sober senses to self-preservation; and it imposed upon the defendant just that labor in establishing its defence that it did upon the plaintiff in proving the defendant's negligence in the first instance.

PER CURIAM.                    *Venire de novo.*