WM. M. MEREDITH v. CRANBERRY COAL and IRON COMPANY.

*Issues—Judge's Charge—Contributory Negligence.*

1. Though the issues tendered by a defendant eliminated more distinctly the matters controverted in the pleadings than those adopted by the Court, he has no ground of complaint if the instructions to the jury raised every defence available to him under those he tendered.

2. Where the defence to an action for damages resulting from an accident to the plaintiff, an employee of defendant's railway, was a want of care and prudence on the part of the plaintiff and those identified with him, and there was evidence tending to sustain the defence: *Held*, that a charge, ignoring the plaintiff's negligence, or co-operating agency in the accident, or that of those identified with him, is erroneous.

3. Though the defendant has been negligent, yet, if plaintiff, by reasonable care and prudence, could have averted the accident, he is not entitled to recover.

MEREDITH *v.* CRANBERRY COAL AND IRON COMPANY.

CIVIL ACTION, tried before *MacRae, J.,* at Spring Term, 1887, of the Superior Court of MITCHELL County.

The facts sufficiently appear in the opinion.

*Messrs. G. N. Folk, D. Schenck, J. F. Morphew* and *W. B. Council,* for the plaintiff.

*Messrs. Hoke & Hoke* and *W. H. Malone,* for the defendants.

SMITH, C. J.   The plaintiff, an employee of the defendant company, at per diem wages, while engaged in transporting wood, to be converted into coal, from the forest to the wood-yard over a tramway constructed for that purpose, was struck with a stick of wood, protruding from a loaded car, and thrown from the platform on which he was standing, and suffered the injury for which compensation is demanded in the present action.   The complaint alleges, that this was brought about by the cording or packing of the wood too near the tramway, and on either side of it, as directed by one Allen Nimson, a manager and middle man, representing the company in the operation of this department of the work, by reason of which proximity, a loose stick, slipping from the load on a passing car, came in contact with that packed, and in its rebound knocked the plaintiff off, and caused the injuries complained of.

The answer denies the charge of negligence, in placing the wood where it was stacked, denies that Nimson was such representative of the company, and insists that the primary and direct cause of the accident, was the negligent packing of the wood on the car and its too rapid running, causing the load to jostle and some of the sticks to slip out of place, to prevent which, the plaintiff imprudently seized one of them; and that in all this packing and transporting, the plaintiff participated with his associate fellow-workmen.

The issues deduced from the conflicting allegations contained in the pleadings and submitted by the Court to the jury, were:

37

1. Was the plaintiff's injury caused by the negligence of the defendant? To which the response was, Yes.

2. Did the plaintiff contribute to his own injury by negligence on his part? Answer—No.

3. What damage has plaintiff sustained by reason of defendant's negligence? Answer—Five thousand dollars.

The defendant, besides a similar issue as to the amount of damages, in place of the two first, proposed the three following, which were refused:

1. Did the defendant cause the wood to be so negligently packed on the side of the track of the tramroad as to make it hazardous for the loaded tram car to pass?

2. Was the plaintiff guilty of negligence, in not using ordinary care and prudence in running the tram car so as to avoid danger?

3. Was the plaintiff a fellow-servant with Allen Nimson?

The facts disclosed in the testimony, heard at the trial, so far as they are necessary to elucidate the matter on which the determination of the defendant's appeal rests, are, in substance, the following:

The wood was cut and brought from the forest, a mile distant from the place of deposit in the yard, on flat cars, each carrying a cord, passing over a tram or railway, on an inclined plane, and descending by force of gravitation, the speed being controlled by breaks on each. At the time of the accident, the train consisted of two loaded cars, upon the rear platform of the foremost of which, the plaintiff was standing. The train was moving with unusual rapidity, and several sticks of the wood on a car were jostled and began to slide, to prevent which, the plaintiff, being called on to do so by one Bass, a fellow-servant, at the lower end of the nearest car, stepped on the adjoining platform of that car, and seized a loose stick, with the intention of replacing it, and in doing so, the stick came in contact with the stacked wood, and the other end struck the plaintiff with great vio-

lence and threw him to the ground. While prostrated, he sustained the injury mentioned. The placing and stacking the wood so near the tramway was done by the express order of said Nimson, to whose charge and management the business was confided by the defendant, and his co-laborers in the work of transportation, as was the loading of the cars and accompanying them to the place of unloading, but it does not appear that any instructions were given as to the manner of putting up the wood, or supervision exercised over the work as it progressed.

It was no uncommon thing, as the plaintiff himself testifies, for the wood on the car to be so disturbed by jarring of the car in motion, and if not going too fast, it was not hazardous to arrest it, and retain it in place, in the manner attempted in this case. It was, if the car was going rapidly. A witness for the defendant, John Ellis, who graded the track, and had been connected with the road for 33 years, after describing the declivity of it, and its passing between the stacks on either side of the yard, testified to having cautioned the plaintiff, perhaps as many as twenty times, about running too fast, and told him that some of the men would be killed if they came down so rapidly, and that sometimes, when himself riding on the cars, he would enjoin it on the employees to run slowly.

They were expected to make eight trips a day, and lacked one of completing the number at the hour 3 P. M., on Saturday, when the plaintiff was hurt.

Allen Nimson, examined for the defendant, also testified to his warning repeatedly when riding on the cars, and when passing them in motion cautioned the hands in charge, the plaintiff among them, against fast running, and that the plaintiff had been in this employment from one and a half to two years.

There was a general concurrence of opinion among the witnesses, and especially among those of skill and experi-

ence, in the defendant's service, who were introduced by it, that cars could, when so loaded, be run with safety, if run slowly, and little, if any, hazard would be incurred in restoring slipping pieces to their proper place by hand; but it would be otherwise, if the cars were moving at a rapid rate. Whether the cars were moving at an increased speed on this occasion, the evidence was somewhat in conflict, but none that they moved slowly.

There was much testimony as to the powers conferred upon Nimson, and exercised by him for, and in place of, the company, and whether the legal effect was to lift him above the sphere of co-servant, to the place of their common principal, in his relation to them, which we do not reproduce, as our decision of the case rests upon other grounds.

The issues tendered for the defendant eliminate more distinctly, in our opinion, the subject-matter of controversy presented in the pleadings, than do those adopted by the Court; but the instructions to the jury, upon them, raised every defence available to the defendant under the others. Its responsibility was made to depend upon actual negligence of its own, the distinction pointed out when it proceeds from a fellow-servant, and when it proceeds from one who, as a middle man, assumes the relation of his principal towards subordinate employees, the absence of contributory negligence on the part of the plaintiff, all which enter into the question of the defendant's liability for damages.

But we do not think that the concurring agency of the plaintiff, as involving a want of care and prudence on his part, was, upon the evidence, with sufficient distinctness presented to the jury.

The culpability imputed to the company was not in the insecure manner of packing the wood, nor did the injury arise from a want of care in this particular, for the wood remained steadfast in its place; but, in causing it to be packed in such close proximity to that on the passing car. Even in

this packing the plaintiff himself took part. The accident was directly brought about by what took place on the car, and the question of the want of due care in those managing it, in avoidance, was not clearly presented in the charge, as a contingency upon which the company's responsibility depended.

A portion of the charge, to which exception was taken, is in these words: " It is not now contended, that the wood was so placed as to strike the car, or the plaintiff upon the car, in the discharge of his duties. It is said to have been caused by a stick falling and striking the wood rack and rebounding against the plaintiff. In order to make the injury the result of the negligence of the defendant, it must have been produced by this negligence concurring with some other act. *If a stick of wood, dipping from the car, struck the wood so negligently placed, and was hurled against plaintiff, and so caused the injury, the injury would be the result of negligence of defendant.* If all these matters concur, then you are to answer the first issue, " Yes."

It will be observed that this instruction ignores, or leaves out of view, the direct co-operating agency of the plaintiff, and those with whom he is identified, in running the cars, to which the accident is primarily attributable, and omits to submit to the jury the question of the plaintiff's own negligence, in bringing it about. If the piling the wood so near the track of the cars was improvident and careless, so as to expose those on and operating them, to needless peril, it was not less their duty to use reasonable care and vigilance in avoiding the consequences of the defendant's negligence, as would suggest themselves to a person of ordinary prudence for his own protection. If there was in this a failure to use such precaution, and harm followed, the plaintiff, as the author of his own damage, would be barred of redress upon the defendant, notwithstanding the prior negligence in the packing.

The true rule for determining the civil responsibility in cases where each party has been negligent, is set out in *Gunter* v. *Wicker*, 85 N. C., 310, and in *Farmer* v. *Railroad*, 88 N. C., 569, where the plaintiff's negligence preceded that of the defendant, and was a *remote*, but not *proximate cause*, of the injury, thus: "If the act (of the plaintiff) is directly connected, so as to be concurrent, with that of the defendant, then his negligence is *proximate*, and will bar his recovery; but when the negligent act of the plaintiff precedes, in point of time, that of the defendant, then it is held to be a *remote* cause of the injury, and will not bar a recovery, if the injury could have been prevented by the exercise of reasonable care and prudence on the part of the defendant."

The correlative proposition is equally supported by authority, that when the defendant has been negligent, yet if the plaintiff neglected those reasonable precautions, by which the injury could have been averted, and which he is expected to use, he cannot have compensation for damages caused by his own want of care and prudence. *Owens* v. *Railroad Co.*, 88 N. C., 502.

Now, there was much evidence upon this point. Testimony was offered to show that the plaintiff assisted in placing the wood where Nimson had pointed out, and in loading the cars and transporting to the yard, and had been in the defendant's employ from one and a half to two years previously. He had been repeatedly warned, by superior officers, of the danger of running the cars too fast; by one of them, fifteen or twenty times, and had been told that some of the men would be killed, if the rapid running was persisted in. He knew, for he says, it was no uncommon thing for the wood to be jarred and displaced when the cars were in motion, and more so when running fast. Thus warned of danger, greater circumspection and vigilance were required of him, and this aspect of the case, on the evidence, was not, as we think, fully called to the attention of the jury, in pass-

ing upon the question of the plaintiff's right of action against the company. We have assumed, though we by no means intend to decide the fact so to be, for the present only, that Nimson was, in a legal sense, as his oversight and functions are described by any of the witnesses who understood what they were, a "*middle man*," in substitution of the principal, in his relations to subordinate servants, so that his orders in regard to stacking the wood, would be the same as if emanating directly from the company, so as to raise an inquiry into the imputed co-operative agency of the plaintiff in causing his own injury.

Passing by the other exceptions, with the general remark, that most of them are obnoxious to the criticism of the plaintiff's counsel, as wanting in specific and distinct statement of assigned error, we award a new trial, to be granted in the Court below, for the error discussed in the opinion.

Error. *Venire de novo.*