* Head-noted by AVERY, J.
The second paragraph of the complaint was as follows: "That on the said 17th day of February, 1886, the plaintiff, coming from his usual place of business was walking upon track of the defendant's North Carolina Division, as he has been in the habit of doing for several years without objection from the defendant, within the corporate limits of the city of Greensboro, where, owing to the gross negligence of the defendant's servant, he was struck from behind by a locomotive engine belonging to the defendant and operated by its agent, and was violently thrown from the track; that he was, thereby, much injured and suffered great physical and mental pain by having his leg badly strained and bruised, *Page 137 
whereby he was temporarily disabled from carrying on his former business as a watchman and laborer, and still suffers great pain and inconvenience." This was denied by defendant.
The issues submitted, with the responses of the jury, were as follows:
1. Was the plaintiff injured by the negligence of the defendant, as alleged? Ans. Yes.
2. Did the plaintiff contribute to his injury by his own negligence? Ans. Yes.
3. What damage is the plaintiff entitled to recover? No answer.
The words "as alleged," in the first issue, were inserted by the Court on motion of the defendant. (143)
Plaintiff testified that on Wednesday of February Court, 1886, he was watchman at Seargeant's Foundry, and was coming up the track of the railroad about eight o'clock A. M. when he was struck from behind by an engine and knocked off the track. He was struck on calf of legs, skin slightly broken, sole of shoe torn off and ankle and back strained; was unable to work for five or six days; his ankle hurt him for nearly a year, but does not feel it now; back sometimes troubled him before the accident but has been worse since; lost five or six days at one dollar per day and spent one dollar for medicine. The morning was clear; he was in good health and walking four or five miles an hour; had been using the track as a pass-way for eleven years without objection from any one; it was so used by large numbers of people. The engine had no cars attached and passed him about as far as half way across courtroom (about twenty feet). He did not hear either bell or whistle; was watching the Salem train, which was switching near him; foundry is about a quarter of mile from depot; witness had walked about half way when struck; had passed the engine with freight train on side track after leaving foundry; engine came off side track on main line and struck him from behind.
Cross-examined. — He was as well as usual that morning — sober, eyesight good, hearing good; had no disability and could have gotten off the road; stopped a minute to talk with his daughter and another woman on track, but did not step off; they were coming from depot. He did not turn around and did not see or hear the engine; if train was on the track he could have seen it; walked the track half way from foundry to depot; Salem train was on side-track; was looking at it, but had no business with it; engine was on side-track, when it struck him, east of Davie street; N.C. R. R. track and C. F. Y. V. track are ten or twelve feet apart; did not hear the bell ringing, (144) but did not swear the bell was not ringing. Murphy was engineer. Sprinkle was first man to come to him; does not think he walked *Page 138 
between the tracks, but on main track, because it is a better walk; had no idea engine was behind him.
Sprinkle, a witness for plaintiff, testified he was helping to shift Salem train; heard some one cry out; turned round and saw plaintiff lying on the ground two or three feet from track; was within twenty feet of where plaintiff was struck; saw engine coming and it ran on to the main line; think it was running four or five miles an hour. At that time Salem train was shifting; heard engine that struck plaintiff coming; don't recollect whether bell was ringing; have been on railroad eight years; engine passed plaintiff ten or twelve feet; saw it come to cross-over track, thence back to main track, and up main track towards the turn-table.
Plaintiff then introduced city ordinances. It was admitted that ordinance forbade trains running over four miles an hour within certain limits, and that plaintiff was struck by an engine within those limits, and that plaintiff was not a trespasser.
Testimony for Defence. — Murphy testified he was an engineer on Richmond Danville road and was, when plaintiff was injured, running the engine which hurt him; came in on North Carolina Railroad track and ran on foundry track; left train on foundry track and backed the engine on cross-over track to main line, and down main line to switch leading to turn-table; first saw plaintiff when pulling on foundry track; he was on main line; next time witness saw him he was walking on Cape Fear track, and the next time eight or ten feet in rear of tender on said track; did not see him on the track before he was struck; witness' seat is on right side of engine; Wiley Holt was on left side; a man on left side of track cannot be seen by engineer in less than ten to (145) thirteen yards; Holt was ringing the bell, sitting in fireman's seat, and told witness, "You have knocked a man off"; this was the first that witness knew of plaintiff being there; witness looked back, went eight or ten feet and stopped, reversing the engine; was using no steam at the time; have been an engineer for thirty years. (It was admitted that witness was an expert.)
Defendant's counsel asked witness, "If engine had been rolling down the track over four miles an hour, could you not have stopped in the time you did actually stop?"
Question objected to upon the ground that the negligence of the witness was the alleged cause of the accident, and the character of the question was calculated to indicate the answer desired. (Objection overruled and exception noted.) The witness answered, "No. If it had been going over that speed it could not have been stopped in that distance." *Page 139 
Witness stated that at the time plaintiff was struck the engine was not running over four miles an hour.
Cross-examination. — If going five miles an hour, could stop in fifteen or twenty yards; witness stopped in ten yards; ran about length of engine and tender; did not, and could not, see plaintiff, who was on the left side; when witness first saw him he was walking four or five miles an hour; did not see him when he stopped on North Carolina track; if witness had been notified in time, engine could have been stopped before striking plaintiff, who crossed foundry track and got on main line ahead of engine.
Wiley Holt, for defendant, testified that he was sitting on south side of engine when plaintiff was struck; as engine came on main line plaintiff was standing "facing us," talking to two women who had their backs to us; engine started on main line for depot; plaintiff was walking between main line and Cape Fear track just before he was struck; he started across main line in front of engine and was struck and knocked off; witness was ringing the bell at the time. (146)
Cross-examination. — Witness did not tell plaintiff he saw him on the track and thought he was going to step off; plaintiff is unfriendly to witness and does not speak to him; plaintiff stepped on track about ten or twelve feet as if he was going to cross; did not notify engineer; plaintiff could have jumped across before engine got to him.
Murphy was re-examined by defendant, and stated that the character of Holt was good, except as to fighting. There was other evidence to the same effect.
The plaintiff was re-examined, and stated that he had a conversation with Holt just after the accident, and he said, "I saw you on track and thought you stepped off; Murphy did not see you." Plaintiff states he never got off main track until he was knocked off, and does not think the engineer saw him. Defendant introduced a plat of tracks alluded to and requested the Court to charge —
1. Walking upon the track by a trespasser does not per se constitute such contributory negligence as will bar a recovery for injuries sustained from the negligence of the servants of a railroad, and such trespasser may recover if he did nothing else to contribute to the injury. Refused.
2. Acts to constitute contributory negligence must be the proximate, and not the remote, cause of the injury, and such acts as directly produce or, concurred in, directly producing the injury. Given.
3. It is required by a railroad company to exercise more care than otherwise necessary in running its trains in a populous town. Refused.
4. Where the public, for a long series of years, has been in the habit of using a portion of the track for a crossing or pass-way, the *Page 140 
acquiescence of the company will amount to a license and impose on it the duty of reasonable care in the operation of its trains, so as to (147) protect persons using the license from injury. Refused.
5. Although the person upon whom the injuries were inflicted contributed thereto by his negligence, if the defendant might have avoided them by ordinary care, and did not, damages may be recovered. Refused.
The Court further charged: As to the first issue, if the accident was caused by negligence of defendant, the jury should answer, Yes; otherwise, No. The burden is on the plaintiff to show negligence. If the engine was moving four miles an hour, defendant not being at a crossing, it was not negligence not to ring the bell, unless the failure to ring the bell is shown to have contributed to the injury. If you find, from the evidence, that the engineer failed to ring the bell, that did not relieve the plaintiff from the necessity of taking ordinary precaution for his safety. Negligence of defendant in that particular was no excuse for plaintiff's negligence; he was bound to look and listen to avoid an approaching train while walking on the track. If he could have seen or heard the engine approaching, and he omitted to do so, and carelessly and thoughtlessly walked on the track, he was guilty of negligence and contributed to his injury, and the consequences cannot be cast upon the defendant. If the company had, by long consent, allowed the public to pass and repass on the track where plaintiff was struck, then plaintiff was not a trespasser, but in the use of it the plaintiff must use precautions that a man of ordinary understanding, and in the possession of the ordinary senses of men, would use to avoid injury to himself by passing trains. The company has a right to the unobstructed use of its track for the purpose of running its trains.
At request of defendant, the Court further charged that if the engineer did not see or, by reasonable diligence, could not have seen the plaintiff on the track, there was no negligence on his part; that it is the duty of every person on the track to get off when an engine (148) is approaching, and not to do so is negligence; and this, whether there was an ordinance forbidding an engine from moving more than four miles an hour or not. The plaintiff had no right to put himself in the way and rely on the ordinance to save him. If he saw the engine approaching, it was negligence to remain in the way, whether the bell was ringing or not.
Plaintiff excepted to the refusal of the Court to charge as requested. Plaintiff moved for judgment non obstante veredicto, and for an inquiry as to damages, on the ground that contributory negligence was *Page 141 
not a ground for defence against gross negligence, as found by the jury, the plaintiff having alleged gross negligence in his complaint. The motion was overruled and the plaintiff appealed.
The first assignment of error rests upon the refusal of the Court below to render judgment in favor of the plaintiff upon the verdict. The plaintiff declared in his complaint that he was walking upon the track of the defendant company in returning from his place of business, "as he had been in the habit of doing for several years, without objection from the defendant, within the corporate limits of the town of Greensboro, when, owing to gross negligence of the defendant's servants, he was struck from behind by a locomotive engine, belonging to the defendant, c., and thrown from the track, and was, thereby, much injured," c. To the issue, "Was the plaintiff injured by the negligence of the defendant, as alleged?" the jury responded "Yes," while they found, in answer to the second issue, that the plaintiff, by his own negligence, contributed to cause the injury.
The most learned and discriminating text-writers concur in the (149) opinion that in actions arising ex delicto there is no degree of negligence that can be described by the word "gross," alone. But where an injury is due, and can be traced directly to the wilful act of another, he is not absolved from liability by the concurrent negligence of the injured party, as he is not, where, by the exercise of ordinary care, he could, notwithstanding the fault of the injured party, have saved the latter harmless. Shearman Redfield on Negligence, §§ 36 and 37; Cooley on Torts, p. 674. Hence, we often find, in opinions emanating from this and other Courts, the expression "gross and wanton negligence," but the former word is never used to describe a degree of carelessness that will excuse the fault of a plaintiff in exposing himself to danger, except where it is improperly held synonymous with either the word wilful, malicious or fraudulent. Shearman Redfield on Negligence, § 3; Wilds v. Hudson R.R. Co., 24 N.Y. 430; Cattawissa Railroad Co. v. Armstrong, 49 Penn. St., 186; Neal v. Gillett, 23 Conn. 437; Cunningham v. Lyness,22 Wis. 245; Sandford v. Eighth Avenue R. R. Co., 23 N.Y. 343. Wharton (in his work on Negligence, § 64) maintains that, outside of the rule applicable to common carriers (which makes them, according to the circumstances, either insurers or bound to show the care of a prudent man in the conduct of his own business, or liable for gross negligence), there are no recognized degrees of *Page 142 
negligence, or negligence that can be described by the words "slight" or "gross." Culbreth v. Philadelphia, c., R. R. Co., 3 Houston, 392; Wharton on Negligence, § 500. In Steamboat "New World" v. King, 16 Howard, 474, Justice CURTIS, for the Court, goes much further when he says, speaking of actions arising out of contract, as well as tort: "If the law furnishes no definition of the terms gross negligence or ordinary negligence, which can be applied in practice, but leaves it to the jury to determine in each case what the duty was, and what omissions (150) amount to a breach of it, it would seem that imperfect and confessedly unsuccessful attempts to define that duty had better be abandoned."
If the plaintiff had alleged that the defendant company, or its servants, had wilfully, wantonly, purposely or maliciously run an engine against and injured him, a very different question would have been presented. In Manly v. The W. W. R. R. Co., 74 N.C. 655, this Court said: "When the injury arises neither from malice, design, nor wanton and gross neglect, but simply the neglect of ordinary care, and the parties are mutually in default, the negligence of both being the immediate and proximate cause of the injury, a recovery is denied, upon the ground that the injured party must be taken to have brought the injury upon himself. That case was subsequently cited with approval as to the first point inRigler v. The Railroad Co., 94 N.C. 604, and in Walker v. Town ofReidsville, 96 N.C. 382. See also The Evansville, c., Railroad Co. v.Lowdermilk, 15 Ind. 120; The Lafayette, c., Railroad Co. v. Adams,26 Ind. 76; 2 Woods R. L., 319.
We think, therefore, that as the plaintiff did not declare that the engineer or fireman inflicted the injury wilfully, wantonly, or through malice, the word "gross" must be treated as a mere expletive, and the use of it, as characterizing the negligence alleged, makes no material difference in the meaning of the complaint; and the finding that the plaintiff was injured, "as alleged," must be treated as an affirmative response to an issue involving only the question, whether the defendant failed to exercise ordinary care in the management of the engine, and thereby injured the plaintiff.
As the jury found, in answering the second issue, that the plaintiff, by his concurrent negligence, contributed to cause the injury, the judgment rendered must stand, unless there was error in misdirecting the jury. Manly v. Railroad, supra; Smith v. Railroad, 99 N.C. (151) 241; Troy v. Railroad, 99 N.C. 298; Chambers v. Railroad, 91 N.C. 471; Turrentine v. Railroad, 92 N.C. 638; Rigler v.Railroad, supra. *Page 143 
In reference to framing issues for the consideration of the jury, this Court has, by repeated adjudications, determined —
1. That only issues of fact raised by the pleadings must be submitted to the jury. Wright v. Cain, 93 N.C. 296; Carpenter v. Tucker, 98 N.C. 316;Emry v. Railroad, 102 N.C. 209.
2. The verdict, whether upon one or many issues, must establish facts sufficient to enable the Court to proceed to judgment. Emry v. Railroad,supra.
3. Of the issues raised by the pleadings, the Judge who tries the case may, in his discretion, submit one or many, provided that neither party is denied the opportunity to present to the jury any view of the law arising out of the evidence through the medium of pertinent instructions on some issue passed upon. Emry v. Railroad, supra; Meredith v. Coal Iron Co.,99 N.C. 576; McDonald v. Carson, 904 N.C. 497. In accordance with these rules, this Court has held that in trying a case like that before us, where contributory negligence is pleaded as a defence, it is not error to confine the jury to the single issue whether the injury was caused by the negligence of the defendant, if the Judge, in his charge, explains the evidence relied on tending to establish contributory carelessness on the part of the plaintiff, and instructs the jury to respond in the negative, if they believe that the plaintiff, according to the law as given by the Court, contributed to cause the injury. Scott v. Railroad, 96 N.C. 428. On the other hand, it was held to be error in the trial Judge to refuse to submit an issue involving the plaintiff's want of care, and afterwards omit such instruction. Kirk v. Railroad, 97 N.C. 82.
In the present case it would not have been erroneous to confine (152) the jury to the single issue first considered by them, instead of framing two, as we do not think that chapter 33, Laws of 1887, can be construed to make a new issue necessary, because a specific averment was required to make a defence available. This defence, like that of estoppel, may be covered by instruction and considered as bearing on a more comprehensive issue, such as one involving title. Meredith v. Coal IronCo., 99 N.C. 576; Railroad Co. v. McCaskill, 94 N.C. 746. But the jury could doubtless have been made to understand the testimony and the law applicable to it much more clearly, and the labor of the Judge would have been made lighter in this, as it would in many other such cases, if the jury had been allowed to pass separately, not only upon the question of plaintiff's, as well as the defendant's, negligence, but also upon a third question raised by the pleadings discussed by counsel on appeal and suggested by the instructions asked for, whether, notwithstanding the plaintiff's carelessness, the defendant, by the exercise of ordinary care, could have prevented the injury. *Page 144 
It was admitted on the trial that the plaintiff was not a trespasser, and the Judge subsequently told the jury that he was not. In the fourth paragraph of the instructions given, as in the entire charge, the Court proceeded upon the assumption that the defendant must exercise ordinary care. It was not erroneous to substitute said paragraph for the first instruction asked, nor to refuse to give that numbered four, offered by plaintiff.
If it was error to refuse to tell the jury that a railroad company is required to exercise more than the usual amount of care because of the greater peril to persons passing, in running its trains in populous towns, it was cured by the response to the first issue, and for the same reason it is now unnecessary to decide whether the law was correctly stated in the instructions numbered one and six, given by the Court.
(153) When a person is about to cross the track of a railroad, even at a regular crossing, it is his duty to examine and see that no train is approaching before venturing upon it, and he is negligent when he can, by looking along the track, see a moving train, which, in his attempt to blindly pass across the road, injures him. Bullock v. Railroad, decided at this term; 2 Wood's R. L., § 333. Even where it is conceded that one is not a trespasser, as in our case, in using the track as a footway from a foundry to his house, it behooves him to be still more watchful. The license to use does not carry with it the right to obstruct the road and impede the passage of trains. A railroad company has the right to the use of its track, and its servants are justified in assuming that a human being who has the use of all of his senses will step off the track before a train reaches him. Wharton on Negligence, § 389a; Parker v. Railroad, 86 N.C. 222; 2 Wood's R. L., § 320.
The plaintiff was known to the fireman, and, presumably known to have ordinary intelligence and to be able to hear an approaching train. The plaintiff could not recover if the engineer and fireman, without any actual knowledge of, or acquaintance with him, had acted as they did on the assumption that he would get out of the way. There was no error, therefore, in giving the instructions numbered 3, 5, 7, 8 or 9.
The plaintiff "would not swear" that the bell was not rung, while the engineer and fireman both testified that it was rung. There was no error, however, in the instruction predicated upon the supposition that they failed to ring it. According to the plaintiff's own testimony, he stood upon the track, with his back towards the engine, and did not see it till after he was stricken by it. He was, therefore, in any aspect of the case, negligent, and the jury would not have been warranted (154) in finding that the defendant could have prevented the injury by using ordinary care, because it was not even negligence unless it *Page 145 
grew out of violating a town ordinance, when it was apparent that the plaintiff was awake and in full possession of all his senses, to run the engine at the rate of five miles an hour. If it was running at five miles an hour (and the only testimony is that it was running four or five), it is manifest that a reduction of the speed to one mile less an hour would not have prevented the injury by enabling the plaintiff to see with his face turned in the opposite direction. But all this might possibly have been more clearly presented if there had been a third issue, and his Honor had said there was no testimony to support an affirmative finding on it. There is no error, and the judgment is affirmed.
Affirmed.
Cited: Daily v. R. R., 106 N.C. 307; Lay v. R. R., Ib., 410; Bonds v.Smith, Ib., 564; Boyer v. Teague, Ib., 633; Denmark v. R. R.,107 N.C. 187-9; Deans v. R. R., Ib., 691; Braswell v. Johnston,108 N.C. 152; Meredith v. R. R., Ib., 617; Waller v. Bowling, Ib., 294;Emry v. R. R., 109 N.C. 598; Clark v. R. R., Ib., 451; Humphrey v. Church,Ib., 137; Cornelius v. Brawley, Ib., 548; Norwood v. R. R., 111 N.C. 240;Blackwell v. R. R., Ib., 153; Vaughan v. Parker, 112 N.C. 100; High v.R. R., Ib., 388; Syme v. R. R., 113 N.C. 565; Smith v. R. R.,114 N.C. 744; Downs v. High Point, 115 N.C. 186; Hansley v. R. R., Ib., 605; Russell v. Monroe, 116 N.C. 728; Patton v. Garrett, Ib., 855;Tankard v. R. R., 117 N.C. 560; Nathan v. R. R., 118 N.C. 1070;Tucker v. Satterthwaite, 120 N.C. 122; Purnell v. R. R., 122 N.C. 850;Neal v. R. R., 126 N.C. 638; 643; Upton v. R. R., 128 N.C. 176;Pinnix v. Durham, 130 N.C. 363; Smith v. R. R., Ib., 346; Bessent v. R.R., 132 N.C. 940; Lassiter v. R. R., 133 N.C. 249; Pharrv. R. R., Ib., 610; Beach v. R. R., 148 N.C. 161; Strickland v. R. R.,150 N.C. 8; Morrisett v. Cotton Mills, 151 N.C. 32;Exum v. R. R., 154 N.C. 411; Abernathy v. R. R., 164 N.C. 93;Ward v. R. R., 167 N.C. 151; Treadwell v. R. R., 169 N.C. 698; Davis v.R. R., 170 N.C. 584; Horne v. R. R., Ib., 657; Hutton v. Horton,178 N.C. 553; S. v. Kincaid, 183 N.C. 718; Davis v. R. R., 187 N.C. 148;Dulin v. Dulin, 197 N.C. 219; Chapman-Hunt Co. v. Board of Education,198 N.C. 112; Furr v. Trull, 205 N.C. 419. *Page 146