CHARLES McDONALD v. J. H. CARSON, et als.

*Issues—Evidence—Notice—Sheriff—Production of Papers—Witness—Judge's Charge.*

1. It is the duty of the Court to see that all material controverted matters contained in the pleadings, are eliminated and submitted to the jury in the form of issues.

2. The submission to the jury of an immaterial issue, when it cannot be seen how it prejudiced the appellant, is not assignable as error.

3. Where the fact in issue is whether a certain contract was made or not, conversations and declarations made by one of the contracting parties, about the

time it was claimed that the contract was made, are admissible in evidence when they tend to show that such a contract was made.

4. The official acts and returns of a Sheriff are acted on without proof of his signature, in a Court in which he is an officer.

5. A return by the sheriff on a notice to produce a paper in these words, "Executed by delivering a copy," implies a delivery to each party to whom the notice is addressed, and is sufficient.

6. The Court has the power, by virtue of §578 and §1373 of The Code, to order the production of proper papers, pertinent to an issue to be tried, and in the possession of the opposite party.

7. Where a party directs a letter to be written from a draught prepared by himself, the copy so made, and not the draught, is the original paper, and notice to produce the draught is not necessary before introducing the letter in evidence.

8. The party introducing a witness, endorses his general credit, and will not be allowed to impeach his general moral character, but he may show that the facts are different from those testified to by the witness, and *it seems* that this rule applies when one party puts his adversary on the stand.

9. It is not necessary for the trial Judge to give the prayers for instructions to the jury in the very words of the prayer. It is sufficient if he gives their substance, when they are proper, and fairly explains the law to the jury, as applicable to the evidence.

10. A prayer for instructions to the jury from the defendant, that upon the whole evidence the plaintiff is not entitled to recover, is not proper under the present system of practice Now the jury do not find for the one party or the other, as formerly, but respond to certain issues, and upon their finding on these issues, the rights of the parties depend.

11. A general exception to an entire charge, is not in conformity to the rule, but the exception should point out the specific portion of the charge deemed erroneous.

(*Rudasill* v. *Falls*, 92 N. C., 222; *Arnold* v. *Estis*, Ibid, 162; *Bowen* v. *Whitaker*, Ibid, 367; *Perry* v. *Jackson*, 88 N. C., 103; *Holding* v. *Holding*, 2 Car. Law Rep., 440 (324); *McLeod* v. *Bullard*, 84 N. C., 515; *Com'rs* v. *Lemly*, 85 N. C., 341; *Coates* v. *Wilkes*, 92 N. C., 376; *Banks* v. *Richardson*, 2 Jones, 109; *Spencer* v. *White*, 1 Ired., 236; *Strudwick* v. *Brodnax*, 88 N. C., 401; *Rencher* v. *Wynne*, 86 N. C., 268; *Bost* v. *Bost*, 87 N. C., 477, cited and approved).

CIVIL ACTION, tried before *MacRae, Judge,* and a jury, at January Term, 1886, of the Superior Court of CABARRUS county.

There was a verdict and judgment for the plaintiff, and the defendants appealed.

The facts are fully stated in the opinion.

*Messrs. W. W. Fleming* and *C. M. Busbee,* (*Mr. H. S. Puryear* was with them on the brief,) for the plaintiff.

*Messrs. Paul B. Means* and *John Devereux, Jr.,* (*Messrs. D. Schenck* and *Chas. M. Price* were with them on the brief,) for the defendants.

SMITH, C. J. The action is to recover compensation for services alleged to have been rendered to the defendants, in bringing about and effectuating a sale of a valuable gold mine belonging to them, and known as the "Rudisill Mine," under a contract, whereby, if the sum of $35,000.00, the price to be demanded, was obtained, the plaintiff was to have a commission of ten *per cent.* thereon. The defendant James H. Carson put in an answer at the return term of the summons, in which, passing in silence the allegations of defendants' ownership of the property, and the denied demand made on them by the plaintiff for payment, he controverts all those contained in sections 2, 3, and 4, which aver the making the contract with the plaintiff, and his agency in a subsequent sale of the mine. The other defendants subsequently filed a joint answer, adopting that of their associate. Two issues were prepared and accepted by the Court, to be submitted to the jury in these words:

"I. Did the defendant J. H. Carson contract with plaintiff, for himself and the other defendants, that they would ask $35,-000 for the Rudisill Gold Mine, and that if the plaintiff would aid them in the sale of said property, by inducing and bringing any parties to them to purchase said property, and that if a sale was effected by the defendants to the parties so induced and brought by the plaintiff, or through the agency and aid of the parties so induced and brought by the plaintiff, the defendants would pay the the plaintiff a commission of ten *per cent.* on the amount for which the mine would sell?

III. "If yes, what damage has the plaintiff sustained?"

During the argument, a third issue was submitted by the Court, numbered II. in the record, as follows:

II. " Was a sale of said mine effected by defendants to Larabee and Smart, (alleged purchasers,) or to one of them ; or through the aid and agency of them, or one of them, to other parties ?   If yes, for what sum ?

The jury respond in the affirmative to the first issue, " yes, $35,000.00 " to that submitted by the Court; and to the other, " $35,000.00 with interest from date of sale."

I. The defendants' first exception is to the action of the Court in preparing the issue numbered II.

There is not only no error in this, but it was the duty of the Court to see that all material controverted matters contained in the pleadings, were eliminated and put in the form of issues, as commanded by the statute.   *Rudasill* v. *Falls*, 92 N. C., 222. *Arnold* v. *Estis*, Ibid., 162.   *Bowen* v. *Whitaker*, Ibid., 367.

In the last case, MERRIMON, J., who delivered the opinion, in reference to a remark of the Judge who tried the cause in the Court below, " that it was supposed to be the duty of counsel to tender issues, and for the Court to settle them in case of disagreement," says: " This cannot be treated as dispensing with a due observance of the statute.   It was the duty of the Court to see that the trial proceeded according to its mandatory requirements.   Having authority, it should have required the counsel to frame the issues, and reduce them to unity, or, if for any cause failing to do this, the Judge presiding should have done so, *before or during the trial.*"

It was, moreover, a necessary issue in developing the merits of the controversy.   The first inquiry related to the contract between the parties, and its provisions ; the other, as to damages.   That introduced, supplied an obvious omission, by extending the inquiry to the sale made by the defendants and the price obtained.

If the issue was material, it ought to have been submitted, and if needless, as its prejudicial tendency is not apparent, it is not assignable as error.   *Perry* v. *Jackson*, 88 N. C., 103.

The second and third exceptions are taken to the plaintiff's testifying to conversations with the defendant Wadsworth, in reference to the price set upon the mine, which took place about a year before the contract with the plaintiff, and about the time of making it, as irrelevant. These exceptions were properly overruled. The information related to the mine—the price put upon it—the disposition of the owners to sell—and the plaintiff's communicating the fact that he had parties that would examine the mine with plaintiff's son. Wadsworth's reply to his inquiry about paying him a commission was: "You see Mr. Carson. He is half owner of the mine now. Any arrangement you may make with him will be satisfactory to myself and Mr. Miller." Certainly this testimony was pertinent to the question of the making of the alleged agreement with Carson, denied and in dispute.

IV. The exception numbered IV is not set out so that we can understand and pass upon its force, unless it be to the admission of secondary evidence of the contents of a letter written by him to Wadsworth. Thereupon the plaintiff introduced a notice bearing this caption :

STATE OF NORTH CAROLINA, ⎫ Superior Court.
     CABARRUS COUNTY.     ⎬

CHARLES McDONALD, Plaintiff,    ⎫
        *against*          ⎬ Notice.
J. H. CARSON, J. W. WADWORTH and  ⎪
   R. MILLER, Defendants.      ⎭

To the defendants above named :

"Take notice that you are hereby requested to produce on the trial of the above entitled action, now pending in the Superior Court of Cabarrus county :

"1st. The letter written by C. McDonald, the plaintiff above named, to the defendant J. W. Wadsworth, of date the 7th day of February, 1879. Unless said letter is produced, its

contents will be offered in evidence by the plaintiff," &c. (The rest of the notice refers to other papers.)

"To James H. Carson, Secretary &c., John W. Wadsworth and R. H. Miller."

(Signed) C. McDonald, Plaintiff.

The notice has the following endorsement:

"Executed by delivering a copy, March 7th, 1885.

"C. A. Potts, Sheriff."

The defendants insisted that there was no evidence of service of the notice on Wadsworth.

The sheriff makes this return to the notice, to be used in the Court of which he is an officer, and his official acts and returns are recognized, without proof to his signature.

In *Holding* v. *Holding*, 2 Car. Law Rep., 440 (324), Seawell, J., delivering the opinion, says: "The law considers every Court cognizant of the official to whom it authorizes such Court to direct its precepts; and when return is made, the officer is presumed in law, to have come personally in Court, and then to have been recognized in virtue of his commission, and hence it was unnecessary at common law, to make any return upon the writ otherwise than 'Executed,' or the like." The same official recognition of his acts, extends to his service of notice by statute.

"When a notice shall issue to the sheriff, his return thereon that the same has been *executed*, shall be deemed sufficient evidence of the service thereof." The Code, §940, which is the Rev. Code, ch. 31, §121, condensed.

The term used in the return, "Executed by delivering copy," necessarily implies a delivery to each of those to whom the notice is addressed, as otherwise it would be but a partial and uncompleted service.

V. The objection to the introduction of a deed from defendants to one J. H. Whiting, conveying the gold mine property, is without force. It shows the sale on which the plaintiff relies for the recovery of his claim.

VI and VII. The next objection was to the order of the Court, requiring the defendants to produce the contract of sale, preceding the execution of the deed entered into between them and Whitney, and which was one of the documents whose production was demanded in the concluding words of the notice already considered, but omitted in setting it out.

This power of requiring the production of proper papers pertinent to the issue, and in possession of an adversary party, has been long and beneficially used in the trial of actions at law, by virtue of positive statute. It is still possessed by the Court. The Code, §§578 and 1373, and cases cited at the foot of those sections, among the more recent of which are *McLeod* v. *Bullard*, 84 N. C., 515; *Commissioners of Forsyth* v. *Lemly*, 85 N. C., 341; *Coates* v *Wilkes*, 92 N. C., 376.

VIII. During the cross-examination of the defendant Wadsworth, testifying for himself and co-defendants, the witness said, "Plaintiff never wrote me about it," referring to the mine. "I received a letter from the plaintiff making certain inquiries." The defendants then interposed an objection which was overruled.

The letter purporting to be that of the witness, exhibit "D" in the transcript, was then produced, and the witness denied having written it himself, but thought it was a copy of one he wrote, and that it was sent by his direction. The letter was addressed to the plaintiff, and refers to the sale of the land. The objection is, that this is but a copy, and no notice had been given to produce the original. If this identical writing was sent by the witness's direction to the plaintiff, it is the original and only communication between them. The words used are spoken to the plaintiff, not those in what is called the original or primary draught. *Banks* v. *Richardson*, 2 Jones, 109.

This exception is disposed of in what has already been said about the formation of the issues.

X. An instruction was asked, "that when a party to an action puts a witness on the stand and examines him, he cannot deny

his credibility, and this principle applies to the plaintiff's examination of the defendant Carson." The Court in response said, "This is not exactly true. When the witness is a defendant, he may be contradicted." If we correctly understand the charge, that the statements of fact by the witness could not be controverted, as that would impeach his credit, it was properly refused. The rule is, that by introducing a witness, you indorse his general credit, and will not be allowed to impeach his general moral character, for that would be imposing upon the jury, but the facts may be shown to be different from those as understood and represented by the witness. No estoppel preventing this, results from his being introduced and examined.

"A party may prove," we quote the language of Chief-Justice RUFFIN, "that the fact is not as it is stated to be by one of his witnesses; for that is merely showing a mistake, to which the best of men are liable." *Spencer* v. *White*, 1 Ired., 236.

Again, it is said in *Strudwick* v. *Brodnax*, 83 N. C., 401 : "A party is not precluded by the statement of one of his witnesses, from showing by others, the facts to be different, but he is not at liberty directly to assail his reputation for truth, and thus destroy his credit before the tryers." And other cases are there cited.

This is the rule which we understand the Judge to lay down, when he says that the witness "*may be contradicted*," and in doing this, he undertakes to limit the sweeping words of the prayer, which, uncorrected, were calculated to mislead the jury.

Instructions were further asked, which in substance are the following :

I. "If the contract entered into with Carson for the defendants, was in terms as represented in the plaintiff's testimony, he cannot recover, there being no evidence of payment of the purchase money specified in either of the contracts with Whitney and his associates.

II. "If this be declined, that if the contract be such as is mentioned in the preceding prayer, the plaintiff is entitled, if he

recovers, to ten *per cent.* only on $2,000, the sum paid by Whitney and his associates, with interest from August 29, 1879.

III. "If the jury find the contract to be, that the plaintiff should bring or introduce to defendants, a party or parties as purchasers of the mine, and that $35,000 as purchase money was to be paid in cash, the plaintiff cannot recover.

IV. "If W. J. Smart negotiated the sale to Whitney and others, as defendants' agent, the plaintiff cannot recover upon such sale.

V. "So far as the plaintiff is concerned, Smart could, as such agent, negotiate the sale, and at the same time be one of the several purchasers, or take a beneficial interest under the contract, and this whether his name was known in the transaction or not."

The instructions were refused, and the Court, after stating the contention of the parties, proceeded to charge the jury thus:

"In order to make plain the matter to be passed on by you, certain questions, called issues, are submitted to you to answer.

"The first is,—was such a contract made, as is described in the complaint? The question is not whether *any contract* was entered into between the parties, but was *this contract*, that is, was a contract substantially the same as this, entered into between them. If it was that plaintiff was to bring them a party who would pay cash, it is not this contract."

After referring to the conflicting testimony about the contract, the Court continued:

"The burden of proof is upon the plaintiff. If he has satisfied you, by a preponderance of evidence, that such a contract was made between them, you will answer—"yes." To have made this the contract, it must have been the understanding and assent of both the contracting parties, not what one or the other understood it to be.

"Then you will proceed to inquire as to the answer to the second issue. The plaintiff says that this contract was made, and that afterwards he introduced Larabee and Smart to the defendants, and that negotiations ensued between the defendants and Lara-

bee and Smart, one or both of them, and in consequence of such negotiations, a sale was made at $35,000.

"Now is that so? Or if a sale under these circumstances *was made*, what was the amount for which the property sold?

"There is much conflicting testimony as to what sale, if any, was made. It is for you to answer the question. If a sale was made to Larabee, or Smart, or to either; or if either aided defendant in making a sale of the property, and such sale was made with the assistance of one or both, you must answer, yes.

"By a sale is meant the transfer of the property for a consideration—not conditionally, and the conditions afterwards performed—but an absolute sale for value.

"A consideration is implied in a deed, because a deed is under seal, and a seal imports a consideration. The plaintiff testifies that there was an absolute sale, and that a deed passed the title out of the defendants, for the consideration of $35,000.

"The defendants, or some of them, testify to certain matters, somewhat complicated, but which amount to an allegation that much effort was made to sell—contracts made, and deeds executed —a stock company organized—and that certain parties who had agreed to buy the property, not having paid all the purchase money, became owners of stock in the company, which represents what had been paid; that the company was dissolved, the property sold and bought in by defendants, who are again owners.

"The negotiations having in effect failed, the burden is on the plaintiff. How is it—yes, or no? If yes, for what sum? If you answer this question in the affirmative, and ascertain the sum for which the property was sold, you will proceed to answer the third issue.

"The answer will be given by a calculation of 10 *per cent.* on the sum for which the property sold, and interest.

"If the plaintiff has not by preponderant testimony, satisfied you that such contract is as alleged in the complaint, and set out in the first issue, you will answer the issue, 'No,' and need not trouble yourselves to answer the other issues."

The reproduction *in extenso* of so much of the charge as bears upon the exceptions, is sufficient to show, without comment, that the case was fairly and fully presented to the jury, and the law explained and applied to the different aspects of the evidence. There is no error in the refusal to give the instructions asked. This is not required, when in substance, the charge responds to so much of the instruction as is correct and proper.

In *Rencher* v. *Wynne*, 86 N. C., 268, it is said that "while a Judge is not required to give an instruction in the very words in which it is prayed, even when correct in law, yet it is to be expected that he will declare the law, as applicable to the facts in proof, and any reasonable inference that may be drawn from them, in order to an intelligent and rightful determination of the issues before the jury."

We advert to a feature in the form of instructions asked, in the first four of which, the demand is, upon the preceding assumed state of fact, that the Court shall tell the jury that the plaintiff cannot recover. This rests upon a misapprehension of the present practice, as we have before remarked in another case, and is corrected in the charge. The jury respond to the issues of fact, and upon their findings, depends the *question of law*, for the Court to decide, whether the plaintiff is entitled to judgment, that is, to recover. All the material facts upon which the plaintiff's right of recovery depends, must be found by the jury, when issues are submitted to them, and upon the facts thus ascertained, the law determines the result, and the Court declares the law. The verdict is not now, as under the old system, for the one party or the other, but it settles the controverted allegations, and presents the facts for the judgment of the Court.

We may further observe, that an exception to a whole charge is not in conformity with the rule, but it should specifically point out the portion deemed objectionable, and not open a wide field to be explored, to find something obnoxious to objection, in the argument upon the appeal, when if the objectionable matter had been brought to the attention of the Court upon the trial, it

might have been rectified. It is only necessary to recall what is said in *Bost* v. *Bost*, 87 N. C., 477, on page 481.

We find no error in the record, and the judgment must be affirmed.

No error.                                              Affirmed.