### T. E. MACE v. THE PROVIDENT LIFE ASSOCIATION.

*Contract—Insurance—Evidence—Fraud—Issues.*

1. Issues are not required to be in any particular form, but they should be so framed as to clearly present the controverted facts.
2. The submission of an immaterial issue, unless it can be seen it misled the jury, is not ground for a new trial.
3. D made an application for a policy of insurance upon his life, three- fourths of which was to be payable to M, whom he alleged in the application to be his first cousin, and the remainder to his wife. Before delivering the policy, the company informed D that M did not have an insurable interest in his life, unless he was indebted to M and was dependent upon him for support, in reply to which the applicant wrote, "M is both a creditor and a friend, upon whom I am dependent." Thereupon the policy was delivered, promising to pay "M, a creditor, $2,250," and the wife $750. The policy contained a clause stipulating that all statements made in the application were deemed material, and if any of them were

MACE v. LIFE ASSOCIATION.

false, or if any material fact was suppressed the contract should be void. M was a creditor of D, but the latter was not dependent upon him. In an action to enforce the contract the company alleged that the policy was procured by false and fraudulent representations, and offered the letter of D, in respect to his connection with M, in evidence as a part of the contract; *Held*, (1) That the letter was not a part of the contract, but was evidence to go the jury upon the question of fraud; (2) M being a creditor of D gave him an insurable interest in the former, and whether D was dependent upon M became immaterial, and a false representation in that respect did not avoid the contract: (3) The opinion and belief of an officer of the company as to the reasons which induced the issuance of the policy were irrelevant and incompetent.

CIVIL ACTION, tried before *Graves, J.,* at Spring Term, 1880, of the Superior Court of CRAVEN County.

It is alleged in the complaint, in substance, that the defendant company is an incorporated Insurance Company doing business in this State; that by a policy of insurance duly executed, and dated the 7th day of September, 1885, upon the life of G. W. Dickinson, it contracted, upon the conditions and stipulations contained in the policy, to pay in the event of the death of Dickinson, the sum of $2,250 to the plaintiff and the sum of $750 to the wife of the said Dickinson; that all its stipulations to be performed by the assured and said G. W. Dickinson have been complied with; that at the time the policy was issued the plaintiff had an insurable interest in the life of said Dickinson, which continued till his death; that he was a creditor of Dickinson; that Dickinson died in July, 1886, and the proofs and requirements of the policy in case of death have been furnished and complied with; that the sum of $2,250 has been demanded and payment refused.

The answer admits the execution of the policy, but alleges that the contract of insurance was obtained by fraud and false representations, and is of no binding force and effect; denies that the plaintiff had any insurable interest in the life of Dickinson, or that he was a creditor; that the stipu-

lations to be performed by the plaintiff and Dickinson had been complied with; and that the plaintiff furnished the proofs required. It admits the demand and refusal, and alleges that nothing is due by reason of the frauds and misrepresentations of plaintiff.

The defendant for further answer sets out at length the conditions contained in the application and policy, one of which requires a statement of the extent and character of the claimant's interest in the policy; another provides that "if any statement contained in the application   *   *   *   * be in any respect untrue," the policy shall be null and void; another provides that "if there has been any suppression or omission of any fact by the party making this application, or if any untrue or fraudulent allegation be contained therein, or in the foregoing answers   *   *   *   the policy and membership made on the faith of this declaration and above answers and proposals shall become null and void."

There is a further provision that the application for the policy is made a part of the contract of insurance, and "each of the statements made therein which, whether written by his own hand or not, every person accepting or acquiring any interest in this contract hereby adopts as their own, admits to be material, and warrants to be full and true, and to be the only statement on which this contract was made."

The answer further alleges in substance that, in the application it was represented that the plaintiff was the first cousin of Dickinson; that the application was refused on that ground, and in reply to a letter of the Secretary of the defendant to the effect that the plaintiff had no insurable interest in the life of Dickinson "unless the said Dickinson was indebted to the said plaintiff and dependent on him for support," the defendant by due course of mail received a postal card of which the following is a copy :

NEWBERNE, N. C., Sept. 14, 1885.

*Sir :*—Mr. T. E. Mace is both a creditor and my friend on whom I am dependent. You will please let the application go through.

Yours truly,<br>
GEORGE W. DICKINSON.

That, upon the faith of the statement contained in said postal and the other representations contained in the application, the policy was issued; that the representations contained in said postal were false and made by the plaintiff himself with fraudulent intent, &c., and that by reason of fraud and misrepresentation the policy was void.

The defendant tendered the following issues:

" I. Was said insurance purely speculative on the part of T. E Mace?

II. Did T. E. Mace furnish to the Insurance Company additional proofs of said indebtedness of George W. Dickinson to him as required by said company in addition to the death proof?

III. Were the representations, in said postal card contained, true or false?"

Which were rejected, and the defendant excepted, and the following were then submitted to the jury, to which they responded as indicated:

I. Was the deceased, George W. Dickinson, *bona fide* indebted to T. E. Mace at the time said insurance was taken out in the sum of $2,250, as alleged in the complaint?

Answer. Yes.

II. Was the deceased, Geo. W. Dickinson, dependent upon T. E. Mace for support at the time said insurance was effected?

Answer. No.

III. Did George W. Dickinson write the postal card to which his name is signed?

Answer. No.

IV. Who wrote the postal card to the Provident Life Insurance Company signed George W. Dickinson?

Answer. T. E. Mace.

V. Was the postal card referred to written by the authority of Geo. W. Dickinson, the assured?

Answer. Yes.

VI. Did the plaintiff obtain the policy of insurance from the defendant by fraud and misrepresentation?

Answer. No.

VII. Did the plaintiff comply with the conditions of the policy?

Answer. Yes.

The other material facts are stated in the opinion.

Judgment being rendered upon this verdict for the plaintiff, the defendant appealed.

*Mr. W. M. Clark,* for the plaintiff.
*Mr. W. E. Clark,* for the defendant.

DAVIS, J., (after stating the case). 1. The rejection of the issues tendered by the defendant presents the first exception in the record.

Issues should be so framed as to present clearly and fairly to the jury the questions of fact controverted, but no particular form is requisite, and every material question raised by the pleadings is presented in the issues submitted, and there was no error in rejecting those tendered  *Meredith* v. *Cranberry Coal and Iron Co.,* 99 N. C., 576 ; *Cuthbertson* v. *Ins. Co.,* 96 N. C., 480, and cases there cited.

2. During the course of the trial the defendant's counsel proposed to read the postal card referred to in the pleadings, insisting that it was part of the application, as if incorporated the original application.

His Honor refused to allow it to be read as a part of the contract, "but permitted it to be read as evidence," and to this the defendant excepted.

The application for insurance, which contains numerous questions and answers and stipulations on the part of the applicant, was dated the 2d day of September, 1885, and signed by Dickinson. The answer to the question, " In whose behalf or for whose benefit is the insurance to be effected?" is "¾ to T. E. Mace, Newbern, N. C. ; ¼ to Amelia Dickinson, Newbern, N. C. * * * Relation to the party to be insured, wife and first cousin."

Following the questions and answers is the following stipulation : " It is hereby declared that these are fair and true answers to the foregoing facts, in which there is no suppression of known facts, and every person whose name is hereto subscribed adopts as his or her own, and warrants to be full, complete and true, and to be the only statements given to the association in reply to its inquiries, which shall be the basis of the contract between the undersigned and the Providence Life Association."

The postal card was dated September 14, after the application had been made and signed, and was written in answer to a letter from the secretary of the company in regard to the application, and it was clearly competent, upon the question of fraud, as any other declaration or statement as an inducement to the contract and tending to show that the real transaction would be, but it was no part of the contract. The defendant says that, although the application is dated September 2 and the policy is dated September 7, the latter was in fact not issued until September 17, as the endorsement shows, and is admitted by plaintiff, and would not have been issued but for the postal card. In view of the finding of the jury in regard to the representations in the postal card in regard to the indebtedness of Dickinson to Mace, we fail to see how the postal card could invalidate the policy.

We are unable to see what possible effect the dependence of Dickinson upon Mace could have upon the application. If Mace had been dependent upon Dickinson, it might have been material as giving the former an interest in the life of the latter, but with or without such dependence, the fact, as found, that Mace was a creditor, gave him an insurable interest in the life of Dickinson.

3. The defendant offered in evidence certain depositions which had not been passed upon by the Clerk, but which it was agreed should be in evidence subject to plaintiff's objections. The following questions and answers, contained in the deposition of W. O. Nelson, Secretary of defendant company, were, upon objection by the plaintiff, excluded, and defendants excepted:

Question 5. Please state whether said insurance on the life of said George W. Dickinson was agreed to in consequence of the representations in said postal card contained?

Answer. Yes.

Q. 6. Would you have insured him, but for said representations in said postal card?

A. 6. Not upon that application and for Mace's benefit. We fully believed at the time that the postal card was written by Mr. Dickinson, and would not for a moment have thought of issuing a policy had we known the card had been written by Mace.

Q. 7. What relation must a party be to have an insurable interest in the life of another?

A. 7. Members of the same immediate family have an insurable interest in the lives of each other; but outside of that relationship, I do not think an insurable interest exists, except when a clear dependency of the insured upon the beneficiary is established. We regard an insurable interest to mean an interest in the continued life of the insured and not an interest in his death.

Q. 8. If a party desiring insurance on the life of another is a creditor, what amount of insurance do you allow him to take out?

A. 8. We permit him to take out a sufficient amount of insurance to cover the debt, the interest accruing and the probable cost of sustaining the policy during the life expectancy of the insured. It is always understood, however, that the beneficiary, in a policy of this kind, will only be entitled to recover the actual amount of his claim at maturity of the policy.

Q. 9. Does your company allow a party to take out insurance for a greater amount than the amount due party from the one insured?

A. 9. Yes, as stated in my reply to interrogatory 8.

Q. 10. Does your company allow parties to. take out speculative risks, merely, when the party insured is not indebted to the one applying for insurance?

A. 10. No, sir."

The excluded evidence was chiefly expressions of opinion, and irrelevant. There was no error in excluding it.

4. The defendant asked the Court to give the following special instructions:

I. That any statement contained in the application or the postal card is as much a part of the policy as though written in the policy itself, and that if any statement therein contained be false the plaintiff cannot recover.

II. That said statements being made by the contract, warranties are made by the parties material to the risk, and if any are false, the plaintiff cannot recover.

III. That if the Insurance Company asked for a statement on the point of the extent and character of any indebtedness from the deceased to the plaintiff, and he failed to furnish it, the plaintiff cannot recover.

IV. The plaintiff can only recover, if at all, upon the amount he shows to be due, and if he shows that the de-

101—9

ceased only owed him $1,000 in 1884, he can only recover that amount, with interest from September 17th, 1884.

His Honor refused to give these instructions, but gave the charge set out in the record, which, so far as it is material to the questions before us, is as follows:

" It will be your duty to find the truth of the matter thus submitted to you, from the evidence in the case. The first issue devolves upon you the duty of determining whether G. W. Dickinson was in fact indebted to the plaintiff at the time he made his application for assurance on the life of said Dickinson to the defendant. This is an enquiry into a matter of fact, and to ascertain how the truth of the matter is, it will be your duty to consider all the evidence bearing on the issue.

"The second and third issues are already, by agreement of counsel, answered ' No,' and fourth issue, ' T. E. Mace.' The fifth issue requires you to find how the fact is in regard to whether the plaintiff wrote the postal card, at the instance or by the authority of G. W. Dickinson, and to determine how this is, you will consider all the evidence bearing on that issue. What is called by the parties here the policy of insurance, purports to be a contract. Now, a contract is a proposal on the part of one party, assented to or accepted by the other party. If there is any fraud used in procuring the assent of one of the parties, then, as to the party misled by such fraud, or misrepresentation reasonably relied on, this vitiates the contract and makes it void as to the defendant or deceived party. It then becomes material to determine whether the defendant has been misled by false representation, or whether it was induced by the fraudulent practices of the parties seeking benefit from the contract.

" Therefore, this issue is submitted to you. In passing upon the issues you are to consider all the testimony, and all the statements made in the application, which are warranted to be true by the very terms of the application. You are likewise

to take into your consideration the postal, not as a part of the original application, but as evidence of what was passing between the parties, and if it was written and received by the defendant before the defendant made the contract, then you are to give it such weight as you think it properly had in determining whether the defendant has been fraudulently induced to enter into this alleged contract. Of course, in considering the contents of that postal card, you will give the words the signification which they usually and commonly bear."

The first and second instructions asked for were properly refused, for the reason already given for refusing to allow the postal card to be read as a part of the original application. The instructions given by the Court in regard to the postal card were proper.

The record does not disclose any evidence that would warrant the third instruction asked for.

It nowhere appears that the defendant company asked for a statement of the character and extent of the indebtedness of the deceased to the plaintiff, and the instruction was properly refused. The same can be said in regard to the fourth instruction asked for. Whether Dickinson was indebted to the plaintiff or not, and whether only in the sum of $1,000, or more, as claimed by the plaintiff, was properly left to the jury.

It does not appear from the evidence that the amount due was only $1,000, with interest from September 17, and the jury find, as a fact, that it was $2,250. There was no error in refusing the instructions asked for.

5. After verdict, defendant moved for judgment on the verdict, because the jury answered issues numbered 2 and 3 in the negative, and issue numbered 4, " T. E. Mace."

As we have already seen, the answer to the inquiry of the defendant contained in the postal card, was not a part of the contract, but the inquiry to which it was an answer, and the

fact that the policy, though dated September 7, was not delivered till after the receipt of the postal card, tends to show quite conclusively that, but for the statement in the postal card, that the plaintiff was a creditor of *Dickinson*, the policy would not have been issued, and the question, therefore, whether Dickinson was indebted to Mace became material, because it was that alone, as appears from the record, which gave Mace an insurable interest in the life of Dickinson, and if untrue, would have been fatal to the plaintiff's claim; but whether Dickinson was dependent upon Mace or not, was in no way material—no more so than whether he was his " friend" or not.

The dependence of Dickinson upon Mace might have given the former an insurable interest in the life of the latter, but for the purpose of this action the 2d issue was entirely immaterial, and its answer, one way or the other, could neither aid nor prejudice either party, and the same may be said of the 3d and 4th issues.

The submission of immaterial issues, unless misleading, cannot be assigned as error. *Perry* v. *Jackson*, 88 N. C., 103; *McDonald* v. *Carson*, 94 N. C., 497; *Cuthbertson* v. *Ins. Co.*, 96 N. C., 480; *Cumming* v. *Barber*, 99 N. C., 332.

But it is insisted by counsel for defendant, that the verdict of the jury shows that the statement of the postal card was false in the particular named, and that any false statement vitiates the contract.

Undoubtedly any false statement as to any material fact contained in the policy or in the application, when it is taken as part of the contract of insurance, would vitiate it; and it is equally true that the parties will not be heard to say that any fact deemed of sufficient importance to be incorporated in the application and policy, as signed by the parties, is immaterial, but it could hardly be said that whether Mace was the " friend " of Dickinson, or whether Dickinson was " dependent upon Mace," or whether the postal was written

by Mace by the authority of Dickinson, could have beem material, or inducements in the issuing of the policy. No such requirements are indicated in the printed form for questions and answers. Upon the question of fraud, it was competent, as any representation tending to show the conduct of the parties in relation to the contract would be, and as such it was submitted to the jury as evidence.

The case of *Bobbitt* v. *Insurance Co.*, 66 N. C., 70; *Sugg* v. *Insurance Co.*, 98 N. C., 143; *Cuthbertson* v. *Ins. Co.*, 96 N. C., 480, and the numerous authorities which have been brought to our attention by the industry and research of counsel, establish the principle that a false statement made in the application, when the application constitutes a part of the contract, will render the policy void, and so will any representation of a material fact by which the company is misled, if falsely and fraudulently made; but in the case before us, the statement in the postal card did not constitute a part of the application, such as was required to be made and signed by the applicant, and it is found by the verdict that the only material representations contained in it were true, and it was further found that the policy was not obtained by fraud and misrepresentation.

Affirmed.