NEW ERA ASSOCIATION v. MACTAVISH.

1. LIFE INSURANCE—STIPULATIONS—CONSTRUCTION—EVIDENCE.
    A stipulation in an application for a life policy that, if the
    applicant's statements were untrue in any particular that
    would have led to his rejection if correctly stated, the policy
    should be void, is for the construction of the court, and the
    company's officers cannot be permitted to testify that the
    application would have been rejected if certain facts had been
    truthfully stated therein.

2. SAME—MATERIAL MISREPRESENTATIONS.
    Under the stipulation, it would require a material misrepre-
    sentation to avoid the policy.

3. SAME—EXPERT TESTIMONY.
    It is not competent for the medical director and secretary of a
    life-insurance company to testify that, in their opinion, the
    facts misstated in an application for a policy were material
    to the risk.

4. SAME—FAMILY HISTORY.
    An applicant for insurance stated in his application that the
    cause of a sister's death was kidney inflammation, whereas it
    in fact was chronic pneumonia. *Held,* not *prima facie* a
    material misrepresentation.

5. SAME—EVIDENCE—PRESUMPTIONS.
    Where, in a suit to cancel a life policy, there was testimony
    tending to show that insured would have been an acceptable
    risk in ordinary companies, notwithstanding a sister had con-
    sumption (he being over 40 years of age, and not living in
    her family), it could not be presumed that a statement by
    insured in his application that his sister enjoyed good health
    was a material misrepresentation.

Appeal from Kent; Perkins, J. Submitted November
19, 1902. (Docket No. 109.) Decided April 28, 1903.

Bill by the New Era Association against Maggie Macta-
vish to set aside a contract of life insurance and enjoin an
action for its collection. From a decree for defendant, com-
plainant appeals. Affirmed.

*Knappen, Kleinhans & Knappen,* for complainant.

*Lee E. Joslyn,* for defendant.

CARPENTER, J.   January 6, 1898, complainant insured the life of Duncan A. Mactavish.   Defendant was the wife of said Mactavish, and the beneficiary in said contract of insurance.   In June, 1898, it was discovered that said Mactavish had tuberculosis, and he died from this disease on the 17th of the following November.

At the time he was insured, Duncan A. Mactavish was a physician in active practice in West Bay City.   He was one month less than 43 years of age, 5 feet 10½ inches in height, and weighed 178 pounds.   He had never been attended by a physician, nor apparently been unable to attend to his active work.   His weight had, however, diminished about 10 pounds during the preceding year, and about 40 pounds during the preceding six or seven years.   To procure this insurance, Dr. Mactavish made an application in which, among other things, he stated that he was in good health and of sound body, that the health of his living sisters was good, and that the cause of the death of a deceased sister was kidney inflammation.

After the death of Dr. Mactavish, defendant commenced a suit at law in the circuit court for the county of Bay to recover on said contract of insurance.   Thereupon complainant commenced this suit in the circuit court for the county of Kent, in chancery, to set aside the contract of insurance on the ground that it was procured by fraud, and obtained an injunction restraining the prosecution of said suit at law.   Complainant's right to resort to chancery for relief, and to enjoin the pending suit at law, was determined by this court in *Mactavish* v. *Kent Circuit Judge,* 122 Mich. 242 (80 N. W. 1086).   The hearing in the lower court resulted in a dismissal of the bill of complaint, and a decree in favor of defendant on her answer in the nature of a cross-bill for the amount stipulated in the insurance contract.   From that decree complainant

appeals. It contends that the insured obtained the contract of insurance by fraud, in these particulars:

1. Instead of being in good health and sound body, as represented, he was afflicted with diabetes and tuberculosis.

2. Instead of having good health, as represented, his sister Jane McIlvenna was afflicted with tuberculosis.

3. Instead of dying from kidney inflammation, as represented, his sister Kate. Manson died from chronic pneumonia.

We will examine each of these questions separately.

1. Did the insured have diabetes and consumption on January 6, 1898, when he represented his health to be good and his body to be sound? There is testimony tending to prove complainant's contention. On the other hand, there is more convincing testimony to the contrary. We are convinced that he did not have diabetes January 6, 1898, and that he subsequently contracted the tuberculosis which occasioned his death the following November. To discuss this testimony in detail, and to give reasons for our conclusion, would serve no useful purpose.

2. We can discuss the second and third claims of fraud together. While we do not think the testimony warrants the claim that Dr. Mactavish acted in bad faith in representing the condition of the health of one sister or the cause of the death of another, it does warrant the claim that the representations were in fact untrue. Assuming, without deciding, that Dr. Mactavish was responsible for unintentional false statements, the question arises whether such false statements avoid the policy.

Dr. Mactavish agreed "that, if these statements are untrue in any particular which would have led to my rejection had it been stated in accordance with the facts, whether intentionally or otherwise, then this contract shall be null and void." The only evidence that Dr. Mactavish would have been rejected, had he correctly stated the condition of Mrs. McIlvenna's health and the true cause of Mrs. Manson's death, is the testimony of Dr. Ruffe, complainant's medical director, and Dr. Webster, its secretary, to the

bald proposition that, if these facts had been truthfully stated, the contract in question would not have been made. This testimony was taken subject to defendant's objection that the same was incompetent and irrelevant.

We think this objection must be sustained and the testimony disregarded. There is no pretense that Dr. Mactavish knew, or had any reason to know, the practice of complainant's officers. If the construction of this language depends on the practice of the insurance company which uses it, then it follows that, if used by two or more companies, it will have a different meaning if the companies differ in their methods. To adopt the theory of complainant is to permit one of the parties to a contract to determine its construction. "The insurer cannot be permitted to testify that he would not have taken the risk had he known the facts." 2 May, Ins. § 580. The language under consideration must be construed by the court. In our judgment, it is susceptible of but one construction: Any material misrepresentation avoids the contract.

Were the misstatements under consideration material? It is assumed in the briefs that the testimony of Drs. Ruffe and Webster, above referred to, may be regarded as their opinion that these misstatements were material; and an attempt to justify their testimony is made by citation of authorities holding it competent for an expert witness to state his opinion of what is material. The authorities touching this question are most carefully collected and analyzed by Judge Taft in *Penn. Mut. Life-Ins. Co.* v. *Mechanics' Sav. Bank*, 19 C. C. A. 286, 72 Fed. 413, 38 L. R. A. 33. We agree with his conclusion: "The great weight of authority in this country, however, is against the view that an insurance expert may be asked his own opinion whether the undisclosed or misrepresented facts were material to the risk;" and that "the proper form in which the question might have been put to a duly qualified witness was, 'Are you able to say, from your knowledge of the practice and usage among life-insurance companies generally, that information of this fact would have

enhanced the premium, or would have led to a rejection of the risk?'" Tested by this principle, there was no evidence tending to prove the misrepresentations under consideration material. Without such evidence, we cannot, under the authorities, find that the misrepresentation of the cause of Mrs. Manson's death was material. The chronic pneumonia of which she died furnished no evidence of hereditary disease. The defendant introduced testimony tending to prove that Dr. Mactavish—being over 40 years of age, and not living in her family—would have been an acceptable risk, according to the rules and practice of ordinary insurance companies, notwithstanding the fact that his sister Mrs. McIlvenna had consumption. We are referred to no authority which authorizes us to disregard this testimony, and assume of our own knowledge that this misrepresentation was material. We do not believe that we can make any such assumption. We are bound, therefore, to decide that the misrepresentation of the condition of Mrs. McIlvenna's health was immaterial, and did not avoid the contract.

It results from this reasoning that the decree of the court below must be affirmed, with costs.

MOORE, GRANT, and MONTGOMERY, JJ., concurred with CARPENTER, J.

HOOKER, C. J. (*dissenting*). I am unable to avoid the conviction that the preponderance of the evidence in this cause establishes the fact that the insured was suffering from an incurable disease when his application for membership was made. I am of the opinion, therefore, that the complainant is entitled to a decree.