**STEWART et al. v. AMERICAN LIFE INS. CO. (two cases).**

Nos. 1268, 1269.

Circuit Court of Appeals, Tenth Circuit.

April 20, 1937.

Rehearing Denied June 2, 1937.

Chas. G. Yankey, of Wichita, Kan. (William Keith, Harvey C. Osborne, John G. Sears, Jr., and Verne M. Laing, all of Wichita, Kan., on the brief), for appellants.

Henry V. Gott, of Wichita, Kan. (Jos. G. Carey and Vermilion, Evans, Carey &

744

Lilleston, all of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

On February 23, 1932, the American Life Insurance Company issued two policies of insurance on the life of Reese Smith Stewart. Stewart died May 31, 1932. On September 3, 1932, the Insurance Company brought these suits in equity to cancel the policies on the ground of alleged material misrepresentations in the applications therefor. On October 11, 1932, Reese Smith Stewart, Jr., and Ora Inez Stewart, the respective beneficiaries under the policies brought actions at law thereon. The Insurance Company filed supplemental bills in which it set up the pendency of the actions at law and prayed that the prosecution thereof be enjoined. The defendants to the equity suits filed motions to dismiss the bills on the ground that the Insurance Company had an adequate remedy at law. The court overruled the motions to dismiss. Thereupon the parties stipulated that the suits in equity should be tried in advance of the actions at law. The equitable actions were consolidated. From a decree cancelling the policies the defendants appealed.

In our first opinion herein, we held that the Insurance Company had an adequate remedy at law and directed that the decree be reversed and the cause remanded with instructions to dismiss the bills without prejudice to setting up the alleged fraud as a legal defense to the actions at law. Stewart v. American Life Insurance Co., 80 F.(2d) 600. On petition for rehearing, we adhered to our former conclusion, one judge dissenting. Stewart v. American Life Insurance Co., 85 F.(2d) 791.

The Supreme Court reviewed our decision on its writ of certiorari, held that the bills stated good causes of action in equity and that the trial court rightfully proceeded with the trial of the suits in equity in advance of a disposition of the actions at law, and remanded the causes "for a consideration of the merits and for other proceedings in accord with" its opinion. American Life Insurance Co. v. Stewart, 57 S.Ct. 377, 381, 81 L.Ed. ——.

On February 11, 1932, Reese Smith Stewart, hereinafter referred to as the insured, made a written application, designated as Part I, to the Insurance Company for a $5,000.00 policy of life insurance.

Part I of the application was taken by the supervisor of agents for the Insurance Company who filled in insured's responses to the questions therein contained. It in part reads as follows:

"b. With what Companies, Societies or Orders have you an application for Life Insurance now pending? 5000 N. Y. Life, 5000 Metropolitan, (For inspection). C. Letter Attached. * * *

"10. In what companies, societies or orders is your life now insured? Company, M.W.A., Amount, 2000, Form of Policy, Year Taken, 1900, and no others. * * *

"I hereby agree to submit to such examinations by the Company's Medical Examiners and to furnish such further information as may be required by the Company.

"Signed at Wichita, State of Kansas, this 11 day of February, 1932. * * *

"Reese Smith Stewart
"Signature of Applicant in Full and of Guardian if Required."

The supervisor of agents testified that he propounded the questions in Part I of the Application to the insured and wrote down the answers therein as given to him by the insured; and that the insured then executed the application.

On February 18, 1932, the insured was examined by the local medical examiner for the Insurance Company. The medical examination, designated as Part II of the application and consisting of questions propounded by the medical examiner and answers made by the insured, in part reads as follows:

"* * *

"14. Name below all causes for which you have consulted a physician in the last ten years:

"Illness, Influenza. Number of Attacks, 1. Date, Feb. 28. Severity and Duration, Two weeks. Any Remaining Effects, No. Attending Physician's Name and Address, Dr. McComb, Wichita, Kas.

"15. Are you now in good health, as far as you know and believe? Yes.

"16. Has any medical examiner or physician expressed an unfavorable opinion as to your insurability or health, No. * * *

"22. Have you now, or have you ever had, any other diseases or any injury? No. * * *

"I hereby declare that all statements and answers as written or printed herein and in Part I of this application are full, complete and true, whether written by my own hand or not, and I agree that they are to be considered the basis of any insurance issued hereon. I hereby authorize any physician or other person who has or may attend me to disclose to said Insurance Company any information thus acquired.

"Dated at Wichita, Kansas, this 18th day of Feb., 1932.

"Witness: O. C. McCandless, M. D.
            "Signature of Medical Examiner.
            "Reese Smith Stewart, Applicant."

The local medical examiner testified that he asked the insured the questions set forth in Part II and wrote down the answers therein as the insured gave them to him. The examiner testified that with respect to question 14, he asked the insured all the causes for which he had consulted a physician in the last ten years and that the insured answered "flu, one attack"; that he did not remember the exact date but that it was in February, 1928; that he asked insured its duration and he said "about two weeks"; that he asked insured if there were any complications or after effects and he said "no."

On February 18, 1932, after being advised that the medical examiner had recommended the acceptance of his application, the insured agreed with the soliciting agent to apply for an additional policy for $5,000.00 and executed a blank form for Part I of the application. It was agreed between the insured and the agent that the questions and answers in the first application should be treated as an application for both policies.

The application consisting of Parts I and II, the additional signed form for Part I and the medical examiner's report were forwarded to the Insurance Company. Relying on the truth of the answers set forth in the application, the Insurance Company issued the two policies mentioned above.

Dr. T. J. McComb, a duly licensed and practicing physician and surgeon at Wichita, Kansas, testified to these facts: He was called to attend the insured at the latter's home in Wichita, Kansas about three or four o'clock, P. M., December 27, 1928. He found the insured unconscious and in a state of general prostration. Insured's extremities were cold, his circulation poor, and his finger nails dark and stenotic, indicating a myocardial weakness. The insured did not respond to questions, stimulants, or tests given at that time. Dr. McComb could not detect any pulse at the wrist. Insured's limbs were helpless, but Dr. McComb could not determine whether it was due to exhaustion or paralysis. He saw insured again later in the day, and got some response to questions and to reflex tests and noted a slight improvement. He gave insured digitalis, a heart stimulant, and tried to resuscitate him and stimulate him, but insured remained only semi-conscious, and his circulation remained weak. Dr. McComb made a urinalysis and found that insured's kidneys were not functioning normally. He learned from the members of the insured's family that insured had been ill for a week or ten days and, from the history, determined that the insured had had influenza. He diagnosed his illness as acuate nephritis and myocarditis. He gave insured urinary and intestinal stimulants. He continued to treat insured until February 19, 1929, calling two times daily until January 10, 1929, and once daily thereafter. When he discontinued treating insured, the latter still had a myocardial insufficiency. After insured regained consciousness, Dr. McComb told him he had had influenza and had overdone; that his heart and kidneys were not in good condition; that he would have to ease up on his way of living, not try to do much and take more rest so that his heart and kidneys would regain strength. In the early part of insured's illness, Dr. McComb did not expect him to recover and advised members of insured's family to send for insured's son, who resided on the Pacific coast.

Dr. McComb found that insured had a well defined case of pyorrhea, and advised insured to have his teeth extracted when his condition had sufficiently improved.

Dr. McComb was called to treat insured again on April 13, 1932. He diagnosed insured's illness as flu. Insured had cramps in his extremities, a temperature of 102 degrees, was prostrated and unable to answer questions intelligently. About April 20, 1932, Dr. McComb detected a weakened condition of the heart and kidneys. On May 31, 1932, insured's pulse ran up to 160 per minute, his blood pressure to 190 and he had a complete suppression of the urine other than that obtained by a catheter. Insured died of uremic convulsions on that day.

Dr. McComb gave as his opinion that insured's heart and kidneys were 'left weakened by the first illness and stated that a person never made a complete recovery from an attack of nephritis and myocarditis.

Another duly licensed and practicing physician and surgeon of twenty-four years experience, engaged in general practice at Wichita, Kansas, basing his opinion on the facts testified to by Dr. McComb, stated that insured's illness in 1928 and 1929 permanently impaired his heart and kidneys and left him in danger of a recurrence on any slight illness that he might contract.

A duly licensed and practicing dentist 'at Wichita, Kansas, testified he was called to insured's home on January 17, 1929; that insured was in bed and very weak; that he found insured's gums and teeth in bad condition due to pyorrhea; that Dr. McComb advised him insured was suffering from heart and kidney trouble and that only a few teeth should be extracted at one time; that thereafter he extracted insured's teeth, taking out a few at a time; that he put in temporary plates April 30, 1929; that he saw insured on several occasions during the summer of 1929 and that insured appeared weak and short of breath, talked about his heart and indicated discouragement at his failure to regain his strength more rapidly.

A lay witness testified she saw insured in a lawyer's office in Wichita in July, 1929; that Mrs. Stewart helped insured into a chair; that insured appeared weak and underweight and that his color was bad and his eyes sunken.

Another lay witness, who had purchased a home from insured under a contract for deferred payments, testified that he had become delinquent on a number of such payments and that insured came to see him about renewing the contract in the spring of 1931; that insured said his health was not very good and he wanted to get the contract up to date so if anything should happen to him there need be no litigation over the contract; that insured appeared weak and short of breath and complained of his heart.

The medical director for the Insurance Company testified that the applications of insured were submitted to him by the Insurance Company to decide whether it should accept them and issue policies thereon; that he examined the statements and answers contained therein, relied thereon and approved the applications on the faith thereof.

Over objection, he was permitted to testify that had he known insured had suffered from myocarditis and nephritis, as testified to by Dr. McComb, he would have rejected the applications.

The soliciting agent for the Company, called as a witness for the defendants, testified that he was present when Part I of the application was filled out; that in answer to question 10, insured responded that he had "a Two Thousand Dollar Woodman Policy, a Ten Thousand Dollar Prudential Policy and a Twenty Thousand Dollar American Life that he had filled out"; that he saw insured on several occasions in the summer and fall of 1929 and during the years 1930 and 1931, and that insured appeared to be in a good condition of health. He further testified that he was present during the medical examination "that Mr. Stewart said he had had the flu in February, 1929. * * * I think he said that he was bedfast two weeks and was at home for five or six weeks thereafter."

Another lay witness testified that he knew of insured's illness in 1929; that he saw insured in the summer and early fall of 1929 and that insured looked normal and well.

A local agent for the New York Life Insurance Company testified that he met insured on January 15, 1932; that on January 22, 1932, he obtained an application from insured for a Five Thousand Dollar policy in the New York Life Insurance Company; that the policy was issued; that on March 15, 1932, he obtained another application from insured for a Ten Thousand Dollar policy in the same Company; that the latter policy was delivered on March 25, 1932; that insured appeared to be in normal health at those times.

The assistant manager at Wichita for the Metropolitan Life Insurance Company testified that he met insured in January, 1932, and took his application for a Five Thousand Dollar life insurance policy in the Metropolitan Life Insurance Company, and that the policy was issued; that insured inquired whether his Company would issue an additional policy for the same amount and he advised insured it would not on account of insured's age.

A lay witness engaged in the grocery business in Wichita testified that he knew insured for twelve years immediately prior

to his death; that insured was a customer of his store and that he saw him frequently; that he knew about insured's illness in 1929; that insured commenced coming back to his store about two months after that illness and continued to come two or three times each week until his last illness; that after insured's illness in 1929, he looked pretty bad, but that he seemed to get back to normal and to resume his regular occupation.

Ora Inez Stewart testified that insured had an attack of influenza in the latter part of December, 1928; that he had a severe cold for about two weeks but continued to attend to his business; that insured remained in bed from that illness two or three weeks and remained in the house an additional two or three weeks; that from about February 28, 1929, insured looked after his property and collected the rents as he had previously done; that he drove his car, mowed the lawns, made repairs on the houses, painted the houses, cut down trees and chopped wood, and that she did not notice any difference in his actions after he had apparently recovered from his illness in 1929 until his last illness; that insured told the supervisor of agents that he had a Ten Thousand Dollar policy in the Prudential Life Insurance Company and a Two Thousand Dollar policy in the Modern Woodmen of America.

Reese Smith Stewart, Jr., testified that he was twenty years of age and had lived with his parents all his life; that insured was a very active man; that he took care of his rental properties, mowed the lawns, made repairs and did all kinds of work about such properties; that he was out of the house in March, 1929 and within two months thereafter, resumed his normal activities and continued to do so during 1930 and 1931. There was other lay testimony to the same effect.

On the foregoing evidence, the trial court found that the insured knowingly and willfully made false answers to questions 14 and 22 of Part II of the application; that such answers constituted material misrepresentations; that the Insurance Company relied thereon and issued the policies on the faith thereof.

Where a chancellor has considered conflicting evidence and has made his findings and decree thereon, they must be regarded as presumably correct and unless a serious mistake has been made in the consideration of the evidence or an obvious error has intervened in the application of the law, the decree should be permitted to stand. Standard Oil Company of Colorado v. Standard Oil Company (C.C.A.10) 72 F.(2d) 524, 527.

"An applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties." Mutual Life Insurance Company of New York v. Hilton-Green, 241 U.S. 613, 624, 36 S.Ct. 676, 680, 60 L.Ed. 1202; Klein v. Farmers' & Bankers Life Insurance Company, 132 Kan. 748, 297 P. 730, 731; Moore v. Pilot Life Ins. Co. (C.C.A. 4) 86 F.(2d) 197, 199.

It is common knowledge that where no complications develop the duration of a case of influenza is from eight to ten days and that the complications which frequently follow influenza are more serious than the primary disease.

When Dr. McComb was called to attend insured in December, 1928, insured had been ill with influenza for a week or ten days and serious complications of heart and kidneys had developed. Dr. McComb continued to treat insured for fifty-four days and when he discontinued attending insured, the latter still suffered from myocarditis and was only in the stage of convalescence. Yet in answer to the direct questions of the medical examiner, insured gave the wrong date of his illness, stated its duration was only two weeks when in fact it was approximately ten weeks excluding the period of convalescence, and that there were no after effects or complications when in truth serious heart and kidney complications followed the attack of influenza.

It is true that insured gave the name of his attending physician and the Insurance Company might have ascertained the true facts by further investigation, but the answers indicated an ordinary case of influenza with no complications and suggested no reason for further investigation. Under these circumstances, the Insurance Company was not put on inquiry and was warranted in accepting insured's statements as true. See Jefferson Standard Life Insurance Co. v. Stevenson (C.C.A.5) 70 F.(2d) 72, 74.

Statements in an insurance application of the character here involved are re-

garded as material as a matter of law,[1] and if they are knowingly false, proof of an actual conscious purpose to deceive is not necessary.[2]

An Insurance Company will be presumed to have acted in reliance on the truth of material representations.[3]

■ We conclude that the evidence established a misrepresentation as to a material fact by the insured in his application for the policies and that the Insurance Company relied thereon and was deceived thereby and issued the policies on the faith of the truth thereof and that it was entitled to have the policies cancelled.

■ Under the weight of authority, it was error to permit the medical director to testify that he would have rejected the application had the true facts been stated in the application.[4]

■ However, whether the Insurance Company would have rejected the application had it been apprised of the true facts was immaterial. The misrepresentations were material as a matter of law.[5] Admission of evidence of an immaterial fact ordinarily is not prejudicial.[6]

■ Furthermore, in cases tried to a chancellor, although incompetent evidence has been admitted over objection, it will be presumed, unless the contrary affirmatively appears, that the incompetent evidence was finally disregarded.[7]

The material findings and the decree are fully supported by competent evidence and the admission of the immaterial evi-

---

[1] Shaner v. West Coast Life Ins. Co. (C.C.A.10) 73 F.(2d) 681, 684; Jeffress v. New York Life Ins. Co. (C.C.A.4) 74 F.(2d) 874, 876; Hesselberg v. Aetna Life Ins. Co. (C.C.A.8) 75 F.(2d) 490, 493; Fountain & Herrington v. Mutual Life Ins. Co. (C.C.A.4) 55 F.(2d) 120, 122; New York Life Ins. Co. v. McCarthy (C.C.A.5) 22 F.(2d) 241, 244; Atlantic Life Ins. Co. v. Hoefer (C.C.A. 4) 66 F.(2d) 464, 466; Jefferson Standard Life Ins. Co. v. Stevenson (C.C.A.5) 70 F.(2d) 72, 73; Dudgeon v. Mutual Ben. Health & Accident Ass'n (C.C.A.4) 70 F.(2d) 49, 51; Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 622, 36 S.Ct. 676, 60 L.Ed. 1202.

[2] Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 622, 36 S.Ct. 676, 60 L. Ed. 1202; Atlantic Life Ins. Co. v. Hoefer (C.C.A.4) 66 F.(2d) 464, 466; Franco v. New York Life Ins. Co. (C.C.A.5) 53 F.(2d) 562, 565; New York Life Ins. Co. v. Price (C.C.A.5) 16 F.(2d) 660, 662.

[3] Shaner v. West Coast Life Ins. Co. (C.C.A.10) 73 F.(2d) 681, 684; Wilson v. Carpenter's Adm'r, 91 Va. 183, 21 S. E. 243, 245, 50 Am.St.Rep. 824; Hicks v. Stevens, 121 Ill. 186, 11 N.E. 241, 243; Grosh v. Ivanhoe Land & Imp. Co., 95 Va. 161, 27 S.E. 841, 842; Holbrook v. Burt, 22 Pick.(Mass.) 546, 552; Cleavenger v. Sturm, 59 W.Va. 658, 53 S.E. 593, 595.

[4] Northwestern Benevolent & Aid Ass'n v. Hall, 118 Ill. 169, 8 N.E. 764, 765; Brown v. Mutual Life Ins. Co., 29 Ga. App. 794, 116 S.E. 559; New Era Ass'n v. Mactavish, 133 Mich. 68, 94 N.W. 599, 600; Louis v. Connecticut Mutual Life Ins. Co., 58 App.Div. 137, 68 N.Y.S. 683, 688; Mace v. Provident Life Ass'n,

101 N.C. 122, 7 S.E. 674, 676; Massachusetts Life Ins. Co. v. Eshelman, 30 Ohio St. 647, 655; Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & T. Co. (C.C.A.6) 72 F. 413, 423–430, 38 L.R.A. 33; Washington Life Ins. Co. v. Haney, 10 Kan. 525, 536, 537; Continental Casualty Co. v. Owen, 38 Okl. 107, 131 P. 1084, 1089; Luke Grain Co. v. Illinois Bankers' Life Ass'n, 263 Ill. App. 576.

[5] Washington Life Ins. Co. v. Haney, 10 Kan. 525, 537; Northwestern Benevolent & Aid Ass'n v. Hall, 118 Ill. 169, 8 N.E. 764, 765. See cases cited in note 1.

[6] Keeton v. Jefferson Standard Life Ins. Co. (C.C.A.4) 5 F.(2d) 183, 187; Community Natural Gas Co. v. Henley (C.C.A.5) 54 F.(2d) 59, 61; Chevrolet Motor Co. v. Gladding (C.C.A.4) 42 F. (2d) 440, 445; Lehigh & N. E. R. Co. v. Smale (C.C.A.3) 19 F.(2d) 67, 68.

In Keeton v. Jefferson Life Insurance Co., supra, the court said:

"Appellant insists in the seventh assignment of error that the court erred in allowing the witness Dr. Alfred Billings, assistant medical director for the Equitable Society, to testify as to whether the company would have issued the policy had the true facts in respect to the transaction been known. The ruling of the court complained of does not seem to us material, in the light of the conclusion we have reached."

[7] Elliott v. Gordon (C.C.A.10) 70 F. (2d) 9, 13; Jonah v. Armstrong (C.C.A.10) 52 F.(2d) 343, 345; Faunce v. Woods, 55 App.D.C. 330, 5 F.(2d) 753, 754, 40 A.L.R. 208; Clauson v. United States (C.C.A.8) 60 F.(2d) 694, 696; National Reserve Ins. Co. v. Scudder (C.C.A.9) 71 F.(2d) 884, 888.

dence of the medical director was a harmless error and does not justify a reversal.

The decree is affirmed.