## Luke Grain Company, Appellee, v. Illinois Bankers Life Association, Appellant.

### Gen. No. 8,357.

Opinion filed October 20, 1931.  Rehearing denied December 17, 1931.

HUGH T. MARTIN, CHARLES C. DICKMAN and J. B. WOLFENBARGER, for appellant.

WEIL, BARTLEY & WEIL, for appellee; JOSEPH F. BARTLEY and ALBERT J. WEIL, of counsel.

MR. JUSTICE JETT delivered the opinion of the court.

This suit was instituted by Luke Grain Company, a corporation, against Illinois Bankers Life Association, a corporation, to recover upon a certain life insurance policy issued by defendant upon the application of John Charles Luke, the insured, and in which plaintiff is the beneficiary.

The declaration consists of two counts. The first count is a special count declaring upon and setting out the policy *in haec verba*. It avers in substance that the policy was made, executed and delivered; that the premiums were paid; that the insured died on March 7, 1929; that notice and proofs of death were furnished to defendant; and that the insured and plaintiff kept, performed, and complied with all the terms, provisions, and conditions of the policy by them respectively to be kept and performed by the terms thereof. The *ad damnum* is laid at $12,000. The second count consists of the common counts.

To the declaration defendant pleaded the general issue and filed 10 special pleas. The second plea avers that plaintiff's sole cause of action is based upon the policy set out in the declaration; that said policy was issued upon a certain application in writing therefor, made and signed by the insured, in which application he was asked divers questions to which he made divers answers; that in said application he agreed to make full, true, and complete answers to all of the questions; that he knowingly, wilfully, falsely, and fraudulently made certain false and fraudulent answers to certain questions in said application; that defendant was de-

ceived and defrauded thereby, all of which questions and answers were material to the risk, and that by reason thereof, the policy was null and void; that defendant did not learn of the falsity, fraud, and deception in making said answers until long after the death of the insured, and stands ready, able, and willing to refund to plaintiff all premiums paid and avers a tender thereof.

In the other special pleas certain provisions of the policy are set out, together with certain of the questions in the application, and the answers thereto, with averments that the answers were falsely and fraudulently made. Appropriate replications to the pleas were filed and issue was joined. A jury trial resulted in a verdict and judgment for plaintiff in the sum of $10,770.59, and this appeal followed.

By the issues the insured is accused of having obtained the policy of insurance by means of fraud in falsely stating and concealing facts in reference to his physical condition and history. One of the principal contentions relied upon by defendant is that at the time the insured made application for the policy, he had heart disease which subsequently caused his death; that he knew of his ailment and that his fraudulent concealment of the fact from defendant induced it to issue the policy, which it would not have done had it been conversant with the facts. The insured made his application for the policy on September 30, 1927, and it was issued under date of December 2, 1927. By one of the questions and answers in the insured's application, defendant was informed that in January, 1927, he had applied for insurance in the Northwestern Mutual Life Insurance Company and that the examining doctor found a heart murmur, which caused his application to be rejected. He gave the name and address of Dr. C. G. Fisher as his attending physician. He told of having had rheumatism in 1896 and piles in

1920, stating he was cured, and of having had grippe twice. Defendant investigated and considered the application several weeks before issuing the policy, and its medical director required Luke to submit to a second medical examination, the report of which is not in the record.

From the facts in evidence, it is apparent that defendant was apprised of the physical condition of Luke. Notwithstanding such knowledge, Dr. Ebersole, medical director of defendant company, rated up the insured's age from 58 to 60 years and the annual premium from the regular rate of $522 to $569.30, approved the application, and the policy was issued. The application was marked "Rated up one year on account of physical impairment," and Dr. Ebersole admitted that the impairment meant the condition of the insured's heart. He was what is known as a substandard risk, and defendant took the increased risk for the increased compensation. When defendant issued the policy with the knowledge that the insured was not in sound health, it is not entitled to avail itself, as a defense, of that provision of the policy which limited its liability if the insured was not in sound health at the time the policy was issued, and it is immaterial what caused such condition of health on the part of the insured. (*Deming v. Prudential Ins. Co.*, 169 Ill. App. 96, 190 Ill. App. 604; *Eagleton v. Prudential Ins. Co.*, 193 Ill. App. 306.)

The eleventh plea is based upon a clause in the application for the policy which reads, "I agree that the insurance herein applied for shall not take effect until the first premium is actually paid and the policy is issued and delivered to me during my good health." Proof that the deceased was in good health is not a condition precedent to a right of recovery. (*Middleton v. North American Protective Ass'n*, 260 Ill. App. 288; *Fairfield v. Union Life Ins. Co.*, 196 Ill. App. 7.)

By defendant's course of pleading, it assumed the burden of proving that the insured was not in good health at the time of his application for insurance, and that defendant was not apprised of that fact. This it failed to do, and is not in a position to claim that the court erred in refusing to direct a verdict in its favor. (*West v. Franklin Fire Ins. Co.*, 245 Ill. App. 124.)

The record discloses that the insured was asked in his application if he had ever been an inmate or a patient of an institution, asylum, or hospital, to which he answered, "No." It appears that he had been treated for piles at the Burleson Sanitarium. We see no serious objection to the answer given by the insured. The place where he took treatment was not known as an institution, asylum, or hospital. He could have made the answer he did and have been perfectly honest in doing so. In this connection, it is further insisted by defendant that the insured falsely represented in his application that he had never undergone a surgical operation, but the proof shows that the treatment received by him at the Burleson Sanitarium was not a surgical operation.

One of the matters presented by the record is the question of the competency of the offered testimony of defendant's medical director, Dr. Ebersole, as to what he would have done had he known certain supposed facts as subsequently disclosed. Among such questions propounded to him, the following are typical examples: Q. "If you had known at the time of passing upon this application that the insured had been treated for piles at Burleson Sanitarium in 1927, would you have accepted his application?" Q. "Did you regard the information called for by that question as material to the risk offered in his application for insurance?" Q. "And would such information be considered or regarded as material by the best practice of life insurance companies generally in the United

States?'' This court had occasion to pass upon the competency of similar testimony in *Kidder v. Supreme Assembly of American Stars of Equity*, 154 Ill. App. 489. It was there held that what the supreme medical examiner would or would not have done under similar conditions was immaterial, and there was no error in excluding testimony relating thereto. Defendant relies upon *Haddad v. New York Life Ins. Co.*, 42 Fed. (2d) 651; *Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.*, 72 Fed. 413. In *Haddad v. New York Life Ins. Co.*, it appears that the statute of the State of Ohio provides that no false answers shall affect the validity of a policy unless it be clearly proved, among other things, that but for such answer, the policy would not have been issued. Under the provisions of that statute, testimony that but for the answer to a certain question an insurance policy would not have been issued, was held admissible. The decision in *Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.* is contrary to the contention of defendant. It is there held that by the great weight of authority in this country, an insurance expert cannot testify as to whether undisclosed or misrepresented facts were material to the risk, or what he would have done had he known certain supposed facts; and that the testimony should be limited in such cases to whether or not insurance companies generally, if made aware of the undisclosed facts, would have enhanced the premium to be charged or would have rejected the risk. The record is voluminous, and without attempting to detail the numerous questions raised relative to the trial court's rulings on the admissibility of certain depositions offered to be read in evidence, and other testimony, we are of the opinion that there was no reversible error in such rulings.

A large number of instructions were offered by defendant and refused by the trial court. Under the

issues and the competent testimony in the record, we observe no error in rejecting them, and appellant in its brief and argument has not set out any specific reasons or argument why the particular instructions were competent under the record in this case.

Many other questions are raised and argued in detail by defendant. We do not regard any of them as a vital factor necessary to be considered in the decision of this case. In view of the fact that defendant was possessed of the information as disclosed by the answers made by Luke at the time he was applying for insurance, the record shows that it was fully apprised of his condition to such an extent that it was put upon notice thereof; that it took such notice is apparent from the fact that it required the insured to take further physical examination, and after considering the application for some weeks, accepted the risk and charged an increased rate because of his physical impairment. By reason of such a course of conduct on the part of defendant, it is in no position now to complain. After a careful examination of the record, we conclude that there is no reversible error therein. The court did not err in refusing to direct a verdict for defendant, and the testimony is sufficient to support the finding and verdict of the jury. The judgment is therefore affirmed.

*Judgment affirmed.*