Lena Rogers, Administratrix of the Estate of Leonard Ingstrom, Appellant, v. The Western and Southern Life Insurance Company, Appellee.

Gen. No. 38,076.

Heard in the first division of this court for the first district at the February term, 1935. Opinion filed June 17, 1935.

DAVID S. CHESROW and SAMUEL L. GOLAN, both of Chicago, for appellant; SAMUEL L. GOLAN and ROBERT S. GREENFIELD, of Chicago, of counsel.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellee; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff administratrix brought suit on a combined accident and life insurance policy issued to Leonard Ingstrom. The statement of claim alleged that while the policy was in force and sometime after August 22, 1934, Ingstrom came to his death as a result of bodily injuries sustained solely through external, violent and accidental means; that there were no defaults in the payment of the premiums; that the death of Ingstrom occurred within 90 days of the date of the bodily injury which caused his death and due proof of death was made by plaintiff and payment refused by defendant; that under the terms of the policy there was due to her $868.

Defendant filed an amended affidavit of merits denying that Ingstrom came to his death while the policy was in force and premium payments not in arrears, or that he died as a result of and within 90 days immediately following bodily injuries occurring on or after the date of the policy and caused by external

violence and purely accidental means. The amended affidavit further denied liability on the ground of a provision in the policy to the effect that no obligation was assumed by the company, unless *on the date and delivery* thereof the insured was alive and in sound health, and averred that the insured was not alive and in sound health on the date of the delivery of the policy, and that, therefore, the policy was never in full force. The cause was tried by the court. There was a finding for defendant, upon which the court, over-ruling plaintiff's motion for a new trial, entered judgment, which plaintiff asks us to reverse.

There is practically no conflict in the evidence. Leonard Ingstrom in August, 1931, was an unmarried man about 37 years old. He had for some time lived at 219 South Throop street, rooming in the home of the administratrix, plaintiff, Mrs. Rogers. He was about five feet, seven inches tall and weighed about 135 or 140 pounds; he usually wore a belt with his initials "L. I." He was engaged in the exterminating business in co-operation with a man named Schwer.

The home office of the defendant insurance company is at Cincinnati, Ohio. It was represented in Chicago by an agent named Bucci. Between Bucci and Ingstrom (upon whose initiative it does not appear) negotiations were begun for the sale of insurance to Ingstrom. August 4, 1931, Bucci received from Ingstrom a deposit of $1.08, together with an application made by him on that date for an industrial life insurance policy on his life. Bucci gave Ingstrom a receipt for the money which stated that the amount was to be applied on account of premium in the event the policy issued, otherwise to be returned, adding:

"Provided the insured be in sound health and over six months of age on the date of said application the company's liability under such policy, if and as issued, shall commence as of the date of said application."

The receipt directed attention to a notice printed on the right hand side of it to the effect, "Return this receipt if you get a policy, and see that the payment is entered in your book."

The evidence tends to show that the insurance for which Ingstrom applied required a medical examination; that the physician for the company called several times for the purpose of making such examination without finding Ingstrom, and that it was finally suggested that Ingstrom should take a different policy which would not require a medical examination. August 10, 1931, Bucci took another application of Ingstrom for insurance on a printed form supplied by defendant insurance company. At the top of the application under the designation "for home office use only" appear in red ink the numbers 8 24, immediately thereunder 1931, without any lines between them, and also 9,228,796, which is the number of the policy upon which this suit is based. The application is signed by Leonard Ingstrom and underneath is an agent's certificate signed by Bucci, bearing the date of "8/10/1931." On the reverse side of this application appears the certificate of defendant's assistant under date of "8/11/31" to the effect that he personally made an inspection of the application and recommended that the policy applied for be issued. August 10, 1931, Bucci issued to Mrs. Rogers for Ingstrom a "temporary and conditional receipt" for 31 cents, which the receipt says is accepted on the statement that the premiums on the policy for which the deposit is made are not in arrears exceeding four weeks, the premium receipt book not being presented at the time of the deposit; that if the premiums are not in arrears exceeding four weeks, the deposit will be entered in the premium receipt book on presentation and surrender of the receipt, but if premiums are more than four weeks in arrears, the policy is lapsed and all

previous payments are forfeited to the company according to the conditions of the policy, and the company will be liable only for the return of the amount of the deposit.

Otto Miroff, the district manager of defendant company, testified that it was customary for the local agent to receive the application and send it to him (the witness) for approval; that he would send it on to Cincinnati; that at Cincinnati the policy would be sent back to his office, and that he would deliver the policy to the insured, "and that completes the transaction"; asked if that was what happened in this case, he replied, "Yes."

The evidence shows that on August 22, 1931, the policy was delivered to Ingstrom at his home at 219 South Throop street; that at that time his hearing, sight, and general bodily health appeared to be good. The policy issued is on the form used by defendant company, bears the number 9,228,796, and in red letters under the designation "date of policy" appears "August 24, 1931." It contains the following provision: "No obligation is assumed by the Company unless on the date and delivery hereof the Insured is alive and in sound health," etc.

Mrs. Rogers last saw Ingstrom alive at his home on the 22nd day of August, 1931. No other witness saw him alive after that date. September 2, 1931 (11 days thereafter) the coroner of DuPage county, Dr. Paul A. Isherwood, who was a physician and surgeon, drove out to 79th street on the county line road, in company with the State's attorney of that county and an investigator from the State's attorney's office. They found the body of a man lying face downward in the weeds. He was clothed and his hands were tied behind his back with a necktie. Upon going through the clothes they found a bank book of the Mid-City Trust & Savings Bank of Chicago bearing the name

"Leonard Ingstrom," a contract of the Supreme Exterminating Company on which was the name of the insured's associate, Theodore Schwer, and a belt buckle of white metal with the initials "L. I." thereon. The body was that of a male person, the doctor says about 30 to 35 years of age and about five feet, eight inches in height, weighing about 130 to 145 pounds. In the opinion of Dr. Isherwood the body had been dead about a week. He found nothing to indicate the cause of death. He says there is no way in medical science whereby it can be determined within a day or two how long a body in the condition of that of deceased had been dead; that it might have been less than a week, or more than 10 days. His best opinion was that the person had been dead about 7 to 10 days. The death certificate admitted in evidence gives the date of death as unknown. It is not disputed that the body was that of the insured.

The premiums paid on the policy were retained by defendant company, but after the beginning of the trial and before its end, a tender of their return, not including costs of suit, was made.

The contention of defendant company is that as the policy was dated August 24, 1931, it did not become effective until that date, and defendant says that there is no proof in the policy tending to show that the insured was alive on that date, and that it is therefore not liable under the terms of the policy; that the delivery alone was not sufficient to put the policy in force. With other cases defendant cites *Union Bank of Chicago v. Metropolitan Life Ins. Co.*, 266 Ill. App. 345. In that case the policy bore the date of June 24, 1929, and the insured died June 22, 1929. There was proof tending to show that the policy was, in fact, executed on June 17th. The policy provided that the company assumed no obligation if the insured was not alive or was not in sound health "on the date here-

of." The court there held that was a valid and subsisting condition, but that in view of the fact that the testimony was conflicting as to when the policy was delivered, it was error for the trial court to direct a verdict for the defendant. The opinion states: "The date of the policy was not in itself conclusive but was susceptible of extraneous proof for the purpose of showing the actual date of delivery."

The proof here as to the actual date of delivery is uncontradicted, and plaintiff argues (plausibly, we think) that all the facts and circumstances in evidence indicate, in the absence of a provision stating the precise date upon which the policy should go into effect, that it was the intention of the parties it should become effective upon the date on which it was delivered to Ingstrom. The evidence shows that the delivery was absolute and by a duly authorized agent of the company; that nothing remained to be done by either of the parties, and that the contract of insurance was therefore complete at the time of the delivery on August 22nd. It is true, the policy bears the date of August 24th, but under all the circumstances we think its delivery by an authorized agent on August 22nd after the payment of premiums indicates the intention of the parties that the insurance contract should be effective as of that date. If we are correct in this interpretation of the insurance contract, the judgment must be reversed, and plaintiff is entitled to recover.

However, if we assume that the insurance contract did not become effective on the 22nd of August but on the 24th (and this is defendant's contention), the question then arises whether plaintiff may recover in the absence of proof tending to show that deceased was alive and in sound health on that date. The provision of the policy is: "No obligation is assumed by the company, unless on the date and delivery hereof

the insured is alive and in sound health.'' Although by its affidavit of merits defendant assumed the burden of proving the absence of life and health of the assured at delivery, it now earnestly contends that it was for plaintiff to prove that the insured was alive and in good health on August 24th, and says there is no such proof in the record, and for that reason plaintiff cannot recover. It is true that there is no direct proof that the assured was alive and in good health on August 24th, although we think it was a necessary inference from the uncontradicted proof that he was alive and in good health on August 22nd in the absence of evidence tending to show the contrary.

Defendant, however, contends otherwise and cites a large number of cases, some of which hold that a provision that the insured must be alive and in good health on the date of delivery of the policy is a condition precedent to liability, and that the burden is upon plaintiff to prove these facts in order to recover.

These cases purport to follow *Ellis v. State Mut. Life Assur. Co.*, 206 Ill. App. 226. Some of the cases undoubtedly hold that such proof by plaintiff is a condition precedent to recovery. Such are *Lewandowski v. Western & Southern Life Ins. Co.*, 241 Ill. App. 55; *Dumara v. Western & Southern Life Ins. Co.*, 268 Ill. App. 626 (Abst.). In others, the court weighing the evidence, which was conflicting upon this point, held that the plaintiff could not recover. The language used was therefore not necessary to a decision. *Sulski v. Metropolitan Life Ins. Co.*, 196 Ill. App. 76; *Kunickas v. John Hancock Mut. Life Ins. Co.*, 253 Ill. App. 617 (Abst.) ; *Dashner v. Federal Life Ins. Co.*, 259 Ill. App. 632 (Abst.). In others, the issue concerned the question of whether a policy, while yet in the hands of the agent of the insurance company, and, in fact, not physically delivered to the insured, was under the evidence delivered to the agent for the beneficiary. This was the case in *Ellis v. State Mut. Life Assur. Co.*, 206 Ill. App.

226 (a well considered opinion) which opinions in some other cases purport to follow although it was (we think) not applicable. *Daniels Motor Sales Co. v. New York Life Ins. Co.,* 220 Ill. App. 83.

*Murphy v. Metropolitan Life Ins. Co.,* 106 Minn. 112, cited by defendant and also cited in many of the cases upon which defendant relies, is, in fact, against defendant. The beneficiary there was afflicted with cancer at the time the insurance policy was delivered, and the court held that under the evidence the plaintiff could not recover, but said, "The burden of alleging and proving such fact was on defendant."

There is conflict on this question in the decisions of the Appellate Courts of Illinois. In *Middleton v. North American Protective Ass'n,* 260 Ill. App. 288, the plaintiff sued upon an insurance certificate issued by the defendant insurance company, which had a by-law to the effect that no liability would arise against the association or benefit to the applicant until the delivery of the certificate while the applicant was in good health. The declaration did not aver such facts, and the trial court sustained a demurrer interposed to it. It was argued on appeal that the by-law created a condition precedent which must be averred and proved by the plaintiff, but the Appellate Court, recognizing the conflict in the decisions, said, "The true rule based upon reason and justice must be that the provision in question does not create a condition precedent but is a matter of defense that must be pleaded and proven." We are inclined to hold that this is an accurate statement of the law. To the same effect is *Luke Grain Co. v. Illinois Bankers Life Ass'n,* 263 Ill. App. 576, 580.

In *Swanson v. Prudential Ins. Co.,* 271 Ill. App. 309, this court, through Justice McSurely, said:

"Defendant asserts that it was a condition precedent to recovery that plaintiff prove that the insured on March 23, 1931, was in sound health, citing certain supporting cases which seem to hold that the plaintiff

has the burden of proving that the insured was in good health at the date the policy was issued. *Dashner v. Federal Life Ins. Co.*, 259 Ill. App. 632 (Abst.); *Dumara v. Western & Southern Life Ins. Co.*, 268 Ill. App. 626 (Abst.). Plaintiff asserts that this is a matter of defense, citing *Johnson v. Royal Neighbors of America*, 253 Ill. 570; *Fahey v. Chicago National Life Ins. Co.*, 263 Ill. App. 637 (Abst.), and other cases. We think the better reasoning supports this latter view. Manifestly, when an insurance company accepts a risk it will be presumed that it is satisfied with the physical condition of the insured. If it has been misled in this respect, this can be presented in defense.''

The above rule becomes decisive of this case. Even if we assume (which is defendant's position) that the insurance contract did not go into effect until the 24th day of August, 1931, under the pleadings the burden of proof was upon defendant to establish, if it could, that the insured was not alive and in good health on that date. There is no proof in this regard from which the court could so find, and the finding of the trial court was therefore not sustained by the evidence. Upon the uncontradicted evidence we hold that plaintiff is entitled to recover.

The question of whether the death of the insured was accidental is not argued in the briefs. The statement of claim alleges that the death was accidental. That allegation is not specifically denied in the affidavit of merits. There is well considered authority to the effect that death under circumstances such as were proved here is accidental within the meaning of that term as used in accident insurance policies. *Hutchcraft v. Travelers' Ins. Co.*, 87 Ky. 300, 12 Am. St. Rep. 484; Joyce on Insurance, vol. 3, secs. 2863, 2864, pp. 2810–2814.

We hold as a matter of fact and law that plaintiff under the evidence is entitled to recover the sum of

$868, which we find to be due from defendant to plaintiff under the terms of the policy, upon which the suit is brought. The judgment of the trial court will therefore be reversed with judgment in this court against Western & Southern Life Insurance Co., and in favor of Lena Rogers, administratrix of the estate of Leonard Ingstrom, for $868.

*Reversed with finding of fact and judgment here.*

O'Connor, P. J., and McSurely, J., concur.